BOWMAN v TAX COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2823 & 2824. Decided May 2, 1938

B. W. Gearhart, Columbus; C. J. Bartlett, Columbus, for plaintiffs.

W. J. Ford, Columbus; T. P. Kearns, Columbus; James G. Kahle, Columbus, for defendant, the Tax Commission of Ohio.

Eugene Carlin, Columbus, for County Auditor.

Paul R. Gingher, Columbus; Thomas M. Miller, Columbus, for State Association of Life Underwriters, Amicus Curiae.

## OPINION

By HORNBECK, J.

Although these cases were instituted separately, they were in the Common Pleas Court and are here presented together because of the similarity of facts and legal questions to be determined.

The appellees, in their tax returns for the year 1932, listed certain policies or contracts of insurance. There were five policies, one of which was issued to Cleo S. Bowman as annuitant by the Sun Life Assurance Company of Canada, designated: "Life Annuity Principal Sum Payable at Death—Single Premium—With Participation". The other contracts named Guy C. Bowman annuitant. Two were issued by the Penn Mutual Life Insurance Company of Philadelphia, designated: "Participating Life Income Policy with Principal Sum Payable at Death"; one issued by the Equitable Life Assurance Society of the United States, designated: "Special Refund Annuity"; one issued by the Mutual Life Insurance Company of New York, designated: "Investment Annuity".

On October 3, 1932, the Tax Commission issued certificates of amended assessments to the Bowmans and on October 14, 1932, the Bowmans filed separate appeals to the Tax Commission from the amended assessments. The commission found against the Bowmans on their appeal and error was prosecuted to the Common Pleas Court of Franklin County, Ohio, where the court, after consideration of the proceedings, reversed the decision of the tax commission, changed the method of determining the valuation of the contracts, and fixed the value thereof for taxation purposes. An appeal on questions of law from the judgment of the Common Pleas Court is prosecuted to this court.

It is not necessary to an appreciation of the questions presented to set out the valuation in figures, as fixed by the tax commission or as modified and fixed by the Common Pleas Court. It will be sufficient to set forth the respective claims of the parties as to the basis upon which the valuation of the income from said contracts shall be fixed for taxation purposes.

It is the claim of the tax commission that the tax upon the income from each and all of the contracts should be computed at 5% of the total amounts paid under said contracts by the companies to the annuitants during the year 1931, §§5638, 5388, GC.; that the moneys so paid were returns from investments, as defined by §§5323, 5328-1 and 5389, GC.

It is the theory of the tax commission that each policy is a single general investment contract, whereas it is the claim of the Bowmans that each and all of the contracts are divisible into annuity and life insurance obligations; that upon the life insurance contracts there is no personal property tax to be assessed and upon the annuity contracts the computation is to be made under that part of §5389, GC, relating to annuities.

In the Sun Life Assurance Company contract the following notations appear:

"No. A 1022236
Monthly Annuity $130.45
Principal Sum $44,727.00
Age 49        Single Premium
For Life Assurances ..............$22,083.96
For Annuity ................... 24,879.39

Total . ......................$46,963.35"

The income yield from this contract for 1931 was $455.06.

In the Penn Mutual Life Insurance Company contracts, Policy No. 1557164, the following notation on the face of the contract and at the top thereof appears:

"AMOUNT
        $37,898.00 Principal Sum
          1,137.00 Annuity
             94.75 Monthly."

As a part of said contract the following also appears:

"The consideration for this policy is composed of $16,647.45 for life annuity and $23,145.45 for life insurance."

The second Penn Mutual Life Insurance Company contract is identical with the quoted part of the first contract.

The income yield from these contracts in 1931 was $665.90.

In the Equitable Life Assurance Society contract the following notations appear on the outside of the contract proper:

"SPECIAL REFUND ANNUITY
No. 8,279,484
Guy C. Bowman,
(Annuitant)
Guaranteed Annuity Payment
$75.27
Payable Monthly
Beginning
January 16th, 1931
Minimum Death Refund
$25,807.00
Age at Issue, 52
Single Premium $27,097.35."

And also on the back thereof and in pen and ink notation:

"Premium for Annuity Portion of
  Contract ....................$12,193.81
Premium for Life Ins. Portion of
  Contract . ................... 14,903.54

Total . ....................$27,097.35"

Income yield 1931—$243.88.

In the Mutual Life Insurance Company of New York contract the following appears:

"Annuity, $1802.50
Payable Monthly ($150.21)
First Payment, January 19th, 1931
Death Refund $51,500.
Date, December 19th, 1930.
Single Premium, $54,075."

And also on the back of the policy this notation in pen and ink:

"Amount Paid for Annuity
  Portion . ......................$25,530.97
Amount Paid for Insurance
  Portion . ...................... 28,544.03

Total ......................$54,075.00"

Income Yield 1931—$510.62.

It thus will be noted that in but one contract is the amount to be apportioned to the annuity premium and the amount apportioned to the insurance premium set forth. This fact and the written terms of the policies prompted the Commission to urge that the full terms of the contracts appear in writing and to permit testimony respecting the allocation of the amounts paid under each contract would be to vary its terms.

Supporting the claim of the Bowmans actuaries of several of the companies which had issued the contracts under consideration, were permitted to testify as to the basis upon which the contracts were written and the meaning and import thereof, as between the parties thereto.

In this court the questions presented are two: Did the Common Pleas Court err, First—In admitting the testimony of the experts as to the nature, purpose and divisibility of the contracts, because in conflict with the parol evidence rule? Second, in determining that the tax commission was in error in fixing the valuation on the incomes from the contracts and the amount of the assessment of personal tax against the Bowmans?

Upon the first question we have no doubt that the trial court was correct in admitting the evidence of the actuaries and that in so doing there was no offense against the parol evidence rule, but that the testimony so admitted was an exception to that rule. The action here is between a party to the contract, namely, the Bowmans, and a third party, namely, the tax commission, et al. In this situation it has been generally recognized that the parol evidence rule

does not control. **Clapp v Banking Company. 50 Oh St 528; D. T. & I. R. R. Co. v Murray, 25 Oh Ap 409.**

Upon the testimony of the experts and especially by the statements of Lawrence L. Stevens, actuary for the Penn Mutual, it is fixed that the policies were issued as upon divisible contracts, one of which in each policy was a single premium life insurance contract, the other a single premium straight life annuity contract and in each of the policies the amount of the payment attributable to each form of contract was properly set forth  By the testimony of Mr. Stevens it appears that there is sound actuarial basis for the issuance of the policies upon the theory advanced by the Bowmans, that when the premium rates for the life insurance contract and the annuity contract are added together,

"they will always with the 5% loading and according to our adaptation provide $30 a year as an annuity and the insurance protection for a thousand the price is for all ages $1050. it is the same, each premium being calculated for each age, identically as if two different policies were issued;" that "as the years go on the dividend from the life insurance policy will increase and the dividend from the annuity policy will decrease, but when added ogether they will be the same for every year," and that "in the very first monthly payment to the annuitant there is a return of a part of the consideration paid by him to the company, together with the interest on that for about one month and that a portion of that consideration goes back to the annuitant at every monthly income payment."

If the testimony of Mr. Stevens is correct, and it may be reconciled with the terms of the policies, there are two separate and distinct contracts in each policy, one life insurance, the other termed an annuity, and further, the payment to the designated annuitants is an annuity as contemplated by §5389, GC, viz.:

"In the case of annuities or other obligations for periodical installment payments including both principal and interest, not separately charged and paid, 4% per centum of half of the principal used to purchase the same, * * * ."

The companies issuing the contracts must be authorized to do business in the State of Ohio, §665, GC. Further, they are authorized "only to take risks connected with or appertaining to making insurance on life * and granting, purchasing and disposing of annuities", §9385, GC. Likewise under §646, GC, when the companies file their annual statements or as soon thereafter as practicable, the superintendent of insurance shall issue to each company * * * authorized to do business in this state, a certificate that it has complied with the laws of this state. Thus upon this record, if it is to be held that the contracts under consideration are general investment contracts, the companies are violating specific statutory provisions. On the other hand, if the contracts are in conformity to that type of investment contracts which the companies are authorized to issue, then their acts are not only legal but in furtherance of the proper conduct of their business. In law when this situation develops it is the obligation of the court to accept that theory which is in accord with legitimate business practice. Likewise, it is well recognized that any law, the effect of which is to fix a tax, must be strictly construed in behalf of one from whom the right to collect the tax is urged. **Cassidy v Ellenhorst, 110 Oh St 535, 59 C. J. 1131.**

The contracts under consideration are in the field of involved, financial agreements. The import and meaning of the contracts in the particulars under consideration in this case is open to construction and thus the testimony of the actuaries was especially helpful to the trial court and is to us.

Inasmuch as the true meaning of these contracts is the gravamen of this case, the tax commission could have assisted the court by the production of expert testimony which would refute, if it could be refuted, the claim of the Bowmans that there is sound actuarial basis within the province of life insurance and annuity contracts for the policies in question. As this testimony was not met, upon the record, it must be said that the contracts are what is claimed for them by the Bowmans and the insurance companies which have intervened in this case amici curiae.

We have no hesitancy in saying that these contracts could be construed as general investment agreements because of the fact that the contracts, though including life insurance protection, are issued without any medical examination of the insured, the guaranteed right of income plus the right to participate in the earnings of the company, the right of the annuitants to withdraw at any time the full amount of the premiums paid to the companies, less the loading costs, plus any earnings from the

date of the last payment to the annuitants. But for the testimony of the actuaries we would be disposed to so consider them.

The construction placed upon the contracts under consideration is supported by the Federal Bureau of Internal Revenue, Federal Tax Service, 1937, Commercial Clearing Houses, Section 95.

The Commission cites and relies upon State, ex Thornton v Probate Court of Ramsey County, 186 Minn., 351; 243 N. W. 389 and Ballou v Fisher et al., 154 Ore. 548, 61 Pac. (2d) 423.

. In the Thornton case it appears that there was a stipulation of facts, in which it was agreed that the contracts under consideration were not annuity contracts. In the instant case this is one of the principal controverted questions. It must, however, be conceded that from the opinion of the Minnesota Court the claim that the contracts were severable, one of which was an annuity, would there have received slight consideration. The Court was definitely of the opinion that the contract was nothing more than a general investment and that, as stated:

"The policy contracts involved herein are not what are ordinarily known as annuity contracts, in which a definite annual sum is to be paid to the annuitant during his life or the life of some other person named in the contract and in which such annual payments absorb portions of the principal.

It seems to us this $90,000.00 (the total sum which the annuitant could withdraw at any time under his contracts) * * * stands precisely in the same relation to him as if he had deposited that amount in the bank under a contract similar to one of these. * * * The law will look behind the name of contracts—these so-called insurance policies—and ascertain their scope and purpose to determine whether or not they come within the operation of the succession tax."

The gist of the opinion in the Ballou case, supra, is against the claim of the appellees in the instant case. However, the Court in the Ballou case definitely found that the policy contracts under consideration were not annuity contracts; that though a definite annual sum was to be paid to the annuitant during his life, such annual payments did not absorb any of the premiums.

It is the specific testimony here that the annual payments to the annuitants do absorb portions of the premiums. In the Ballou case it was also urged that the contracts under consideration had all the features of ordinary life insurance policies, against which contention the Court held. It is not so claimed, in the instant case. But it is urged that the contracts are separable. Unfortunately the Ballou opinion does not set out the language of the statutes under consideration. We have, however, been favored by a quotation from one of the sections of the statutes involved, namely, Oregon Laws, 1931, page 576, Section 9.

"The term gross income does not include the following items which shall be exempt from taxation under this act.

(a) * * *

(b) Amounts received by insured as return of premium or premiums paid by him under life insurance, endowment, annuities, interinsurance or reciprocal contracts, either during the term of the contract or at maturity * * * ."

The exception there extends to that portion of an annuity which is a return of premium or premiums paid by the annuitant under his contract. Our statute, §5389, GC, does not attempt to make any division of the money paid to the annuitant which is a return of the premiums and the money paid to him which is in the nature of earnings on the money invested with the company. The statute has application to annuities, that is to say, payments in which are included both the return of some of the premiums together with returns from the investment. The brief of counsel for appellees directs our attention to the fact that in the Ballou case the question before the court related to a tax exemption and that in this situation the statute is strictly construed against those who are seeking to evade the tax. This is a sound contention and the court stressed it.

As we have before indicated, inasmuch as the testimony of the experts was admissible, there was enough before the trial judge to support the conclusion that these policies were issued upon the theory asserted by the Bowmans and the insurance companies and unless and until this conclusion was shown to be untenable or unwarranted, we must assume the good faith of the companies and the parties in negotiating the contracts.

Judgment affirmed.

BARNES, PJ, & GEIGER, J, concurring.