## STATE EX REL. MARTIN E. THORNTON AND ANOTHER v. PROBATE COURT OF RAMSEY COUNTY.[1]

June 17, 1932.

Nos. 29,038, 29,076.

[1]Reported in 243 N. W. 389.

*O'Brien, Horn & Stringer* and *McNeil V. Seymour*, for relators.
*Henry N. Benson,* Attorney General, and *John F. Bonner,* Assistant Attorney General, for respondent.

HOLT, J.

Certiorari to the probate court of Ramsey county to review its orders imposing and fixing the amount of a succession tax arising out of certain contracts issued to the decedent by three insurance companies.

Relators, the executors of the estate of Joseph M. Thornton, deceased, present for decision the question whether the rights of the beneficiaries to succeed to the sums of moneys on so-called annuity insurance contracts or policies issued to deceased are subject to the succession tax law of this state. The facts were stipulated and condensed are as follows:

Each of three life insurance companies authorized to do business in this state issued, during the first part of 1931, so-called annuity policies or contracts to Joseph M. Thornton, who thereafter died testate on July 1, 1931. At the time these contracts were issued Thornton paid to each company the sum of $30,000. No future payments or premiums were required. None of the contracts contemplated any segregation of assets applicable to or securing the payments to be made under the contracts, but the above named sums paid by Thornton became the absolute property of the company receiving the same. Each company agreed to pay Thornton annually a specified sum, beginning with the year 1932. The sum so agreed to be paid each year was $900 by one company, $1,050 by another, and $980 by the third. Besides these annuities, the companies agreed that during Thornton's lifetime there would be guaranteed earnings on the sums paid in equal to three and one-half per cent, and that he would be paid such additional amount as might be allocated to him by the board of directors of each company out of interest earnings in excess of three and one-half per cent.

Old line life insurance companies issue level premium policies in which they agree to account to the policyholder for his proportionate share of the divisible surplus. The amount so accounted for

is called a dividend and may be taken in cash by the policyholder. This dividend varies with the success of the company. In such companies the amount included in the premium, to provide the proper reserve, is based upon the assumption that the company will earn at least three per cent on its reserve.

The policy contracts here involved are not what are ordinarily known as annuity contracts in which a definite annual sum is to be paid the annuitant during his life or the life of some other person named in the contract, and in which such annual payments absorb portions of the principal. The annual rate of interest earned by the companies upon their total investments exceeded five per cent up to the time these contracts were issued, and it seemed probable that the annuities to be paid under this type of contracts would exceed five per cent in the future. Except in what is known as business insurance, the right to change beneficiaries is common to all life insurance; and so is the right to cancel the contract and receive the full cash surrender value thereof; also the right to borrow on and hypothecate the contract or policy. The amount paid the beneficiaries was $94,712.99. There were here no annuity payments, for Thornton died before the year in which such were to be paid; and under the contracts the beneficiaries, in addition to the $30,000, were entitled to receive a sum equal to the single premium paid less annuity payments. If the insured died before the time of making the first payment each company agreed to pay to the beneficiaries the total amount of the premium paid; and each company assumed the risk of the small earnings and depreciation and loss on its investment, the result of which might be that the company would be required to make, during Thornton's lifetime, a larger annual payment than it earned, and, upon Thornton's death, pay to the beneficiaries an amount in excess of the benefits accruing to it from the premium paid. The contracts are made part of the stipulation. These are very lengthy and need not be noted except as to provisions deemed important to determine the question for decision. Among these are that the $30,000 Thornton paid to each company it agreed to repay to him at any time during his lifetime

upon 90 days' notice. He also reserved the right to change beneficiaries. No physical examination seems to be required of the one who pays the consideration for such contracts.

Relators maintain that these contracts have all the features of the ordinary life insurance policies and hence are not subject to the state transfer or succession tax. Ordinary life insurance policies, after being in force for a short time, have a cash surrender value, a loan value, and the insured usually has the right to change beneficiaries and to assign the policy. Like features are found in the contracts here involved. Great reliance is placed on Tyler v. Treasurer, 226 Mass. 306, 115 N. E. 300, L. R. A. 1917D, 633. The policies there were ordinary life insurance. We find no provision in our inheritance or succession tax law designed to impose a tax upon the insurance payable to the beneficiaries named in such policies, and assume, without so deciding, that the legislature did not intend to reach them. New York courts also construe their inheritance tax statute as not intended to cover the proceeds received by beneficiaries named in the ordinary life insurance policies. In re Voorhees' Estate, 103 Misc. 515, 171 N. Y. S. 859, affirmed in 200 App. Div. 259, 193 N. Y. S. 168; In re Einstein's Estate, 114 Misc. 452, 186 N. Y. S. 931, affirmed in 201 App. Div. 848, 193 N. Y. S. 931. The attorney general insists that Chase Nat. Bank v. U. S. 278 U. S. 327, 49 S. Ct. 126, 73 L. ed. 405, 63 A. L. R. 388, and In re Will of Allis, 174 Wis. 527, 184 N. W. 381, are decisive of this case. To this we cannot assent.

The federal statute specifically imposes a tax upon "the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." Revenue act 1921, 42 St. p. 279, § 402(f).

The Wisconsin statute provides [Wis. St. 1929, § 72.01(7)]:

"Insurance payable upon the death of any person shall be deemed a part of his estate for the purpose of the tax, and shall be taxable to the person or persons entitled thereto."

But our inheritance or succession tax statute as it now stands does not in terms cover ordinary life insurance.

Although the contracts here in question have features in common with ordinary life insurance policies, their true effect and scope are vastly different. It cannot well be denied that the $90,000 Thornton paid to these companies remained virtually at his disposal, use, and control as long as he lived and passed at his death to the beneficiaries he named. True, the money he paid became the property of the companies, but they guaranteed to him a certain percentage of earnings thereon each year and agreed to pay him specified annuities each year, together with such dividends as might be earned and allocated to the fund his $90,000 helped to create. As long as he lived he had the right, upon notice, to have $90,000 returned. It seems to us this $90,000, under these contracts, stands precisely in the same relation to him as if he had deposited that amount in a bank under a contract similar to one of these. There would be an obligation to pay the whole sum paid or deposited to him, if demanded in his lifetime, and to appointed beneficiaries upon his death. This obligation was an estate or property right of his to which the beneficiaries named succeeded at his death, and is subject to the tax.

An examination of the various provisions of the contracts before us strongly suggests that the reason for their coming into existence was the desire to evade the expense of probating estates and the burden of the succession tax. Quite a saving can be made in this manner if a person is in position to convert his estate into cash and pay it all to a responsible corporation upon its agreement to pay a stipulated annuity each year during life and certain dividends, or to pay back the whole amount paid in whenever desired. The law will look behind the name of contracts—these so-called insurance policies—and ascertain their scope and purpose to determine whether or not they come within the operation of the succession tax.

It is also suggested that these contracts have some of the characteristics of a trust, the settlor reserving to himself the whole beneficial use thereof during life, to which use the beneficiaries

succeed upon his death; and we are cited to In re Estate of Rising, 186 Minn. 56, 242 N. W. 459. The analogy is not of course perfect, for it was stipulated that the money paid in became the property of the companies.

But technically these contracts are not insurance policies and cannot escape the tax as such. They are, to say the least, annuity contracts. Decisions as well as statutes make a distinction between the two. The court in Commonwealth v. Metropolitan L. Ins. Co. 254 Pa. 510, 514, 98 A. 1072, says:

"Insurance as generally understood is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semi-annually, monthly or weekly. The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment."

The Pennsylvania law subjected foreign insurance companies doing business in that state to a tax upon the premiums received; but the court held that moneys paid to such companies as consideration for annuity contracts are not so taxable. Cuthbert v. North American L. Assur. Co. 24 Ont. Rep. 511, holds that an annuity contract is not a life insurance policy. People ex rel. Metropolitan L. Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, holds that the state tax to be paid upon premiums collected by insurance companies does not apply to the consideration paid for annuity contracts.

Our statute, G. S. 1923 (1 Mason, 1927) § 3410, has the distinction in mind. It may be here added that the contracts in the case at bar are more than annuity contracts. There is some risk, as in insurance, connected with the latter. The company stands to gain if the annuitant should die before he attains his expectancy age, and to lose if he long survives such age; whereas under these con-

tracts the amount paid in or deposited is always for the use and at the disposal of the one who paid it as long as he lives and passes to the beneficiaries at his death.

The slight increase in the amounts payable to the beneficiaries by reason of Thornton's death before any annuity fell due has no important bearing on the decision.

The writ is discharged and the orders of the probate court are affirmed.