## HALE v. HELVERING, Commissioner of Internal Revenue.

### No. 6608.

United States Court of Appeals for the District of Columbia.

Decided Aug. 17, 1936.

Eugene Meacham, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Robert H. Jackson, Robert L. Williams, Norman D. Keller, Francis I. Howley, and E. W. Pavenstedt, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case, which by stipulation was consolidated for review with W. T. Hale, Jr., v. Guy T. Helvering, Commissioner of Internal Revenue, No. 6609, 66 App.D.C. 245, 85 F.(2d) 822, is an appeal from that part of a decision of the United States Board of Tax Appeals affirming the assessment to the appellant of an income tax deficiency for the year 1929. The sole question in the case is whether the compromise with the maker, who was able to pay them, of promissory notes, for less than their face value, constitutes under the revenue laws a sale or exchange of capital assets entitling the taxpayer to a capital loss. The case was heard below on a stipulation of facts, made applicable to No. 6609 also, as follows:

"R. W. Hale and W. T. Hale, Jr., [the petitioners] are brothers, for many years engaged in the grain business in Nashville as partners in the firm of J. R. Hale & Sons.

"During the year 1925, R. W. Hale and W. T. Hale, Jr., sold an orange grove in Polk County, Florida, for the sum of $60,-

000.00. Full fee title was transferred to the purchaser upon the payment of $20,000.00 in cash and $40,000.00 in notes secured by a first mortgage.

"The respective petitioners each reported their pro rata share of the profit upon this transaction in 1925 and paid the tax thereon.

"Upon maturity of the notes in 1927, the maker, although fully financially able to pay, refused. During the year 1929, suit to collect in the amount of $22,418.84 was instituted in the Federal District Court for the Northern District of Ohio, Eastern Division. Prior to judgment and during the taxable year 1929, a settlement was agreed upon which resulted in a loss to petitioner R. W. Hale of $7,497.22 and a loss to petitioner W. T. Hale, Jr., of $7,497.22.

"The respondent Commissioner in his computation of deficiencies asserted against the petitioners herein, refused to allow as a capital net loss to be applied against the respective petitioner's capital net gain, the loss sustained upon the sale of the Florida orange grove property in Polk County."

Before the Board of Tax Appeals the Commissioner of Internal Revenue conceded deductibility of the amount, but asserted that it was allowable only as a bad debt.

The pertinent portions of the applicable statute, the Revenue Act of 1928, 45 Stat. 791, 811, § 101 (26 U.S.C.A. § 101 note), are the following:

"SEC. 101. CAPITAL NET GAINS AND LOSSES.

"(a) Tax in case of capital net gain.— In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

"(b) Tax in case of capital net loss.— In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) Definitions.—For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

\* \* \* \* \* \*

"(4) 'Ordinary deductions' means the deductions allowed by section 23 other than capital losses and capital deductions.

"(5) 'Capital net gain' means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

\* \* \* \* \* \*

"(7) 'Ordinary net income' means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions.

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business . . .."

The primary contention of the petitioner is that the loss suffered was one "resulting from the sale or exchange" of the mortgage notes as capital assets. In support of this contention petitioner asserts: The loss sustained was not a bad debt within Section 23 (j), because under the facts the maker of the notes, although unwilling

to pay, was able to do so;[1] the disposition of the notes comes within the usual definitions of the phrase "sale or exchange," such as:

"A 'sale' is a contract whereby one acquires a property in the thing sold and the other parts with it for a valuable consideration." Words and Phrases, Second Series, Vol. 4, page 437.

"A 'sale' is generally understood to mean the transfer of property for money." id., at page 441.

"The word 'sell' . . . in its ordinary sense means a transfer of property for a fixed price in money or its equivalent." United States v. Benedict (C.C.A.) 280 F. 76, 80.

"An exchange is: A mutual grant of equal interests, the one in consideration of the other." Webster's New International Dictionary (1931).

"The distinction between a sale and exchange of property is rather one of shadow than of substance. In both cases the title to property is absolutely transferred; and the same rules of law are applicable to the transaction, whether the consideration of the contract is money or by way of barter. It can make no essential difference in the rights and obligations of parties that goods and merchandise are transferred and paid for by other goods and merchandise instead of by money which is but the representative of value of property. Com. v. Clark, 14 Gray (Mass.) 367." Black's Law Dictionary, 3rd ed. 713.

■■■■ We think the position of the petitioner is not supportable. So far as the argument that the losses in question were not bad debts within Section 23 (j) is concerned: Assuming this to be true, without deciding the point, it does not follow that the disposition of the notes was a sale or an exchange. So far as the applicability of the usual definitions of "sale" and "exchange" to the disposition of the notes in question is concerned: It is well settled

that the language of the Revenue Act is to be taken in its ordinary meaning. In Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484, where the meaning of the word "interest" was in question, the Supreme Court, speaking through Mr. Justice Roberts, said:

"The rule which should be applied is established by many decisions. 'The legislature must be presumed to use words in their known and ordinary signification.' Levy's Lessee v. McCartee, 6 Pet. 102, 110 [8 L.Ed. 334]. 'The popular or received import of words furnishes the general rule for the interpretation of public laws.' Maillard v. Lawrence, 16 How. 251, 261 [14 L.Ed. 925]. And see United States v. Buffalo Gas Co., 172 U.S. 339, 341 [19 S.Ct. 200, 43 L.Ed. 469]; United States v. First Nat. Bank, 234 U.S. 245, 258 [34 S.Ct. 846, 58 L.Ed. 1298]; Caminetti v. United States, 242 U.S. 470, 485 [37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168]. As was said in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370 [45 S.Ct. 274, 69 L.Ed. 660], 'the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.' This rule is applied to taxing acts: De Ganay v. Lederer, 250 U.S. 376, 381 [39 S.Ct. 524, 63 L.Ed. 1042]."

Accepting the definitions relied upon by the petitioner as constituting the ordinary meaning of the words in question, such definitions do not include the disposition of the notes under the facts here. There was no acquisition of property by the debtor, no transfer of property to him. Neither business men nor lawyers call the compromise of a note a sale to the maker. In point of law and in legal parlance property in the notes as capital assets was extinguished, not sold. In business parlance the transaction was a settlement and the notes were

---

[1] Deductions as bad debts are provided for as follows: "Sec. 23. Deductions from Gross Income. In computing net income there shall be allowed as deductions: * * * (j) Bad debts.—Debts ascertained to be worthless and charged off within the taxable year . . . and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." There was no issue below as to whether the loss, if not deductible as a capital loss,

was an ordinary loss, within subparagraph (j), *supra*, as a bad debt, or within subparagraph (e) providing: "(e) Losses by individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—* * * (2) if incurred in any transaction entered into for profit, though not conected with the trade or business . . . " 45 Stat. 799, § 23 (e, j) 26 U.S.C.A. § 23 and note. We therefore make no ruling upon that point.

822

turned over to the maker, not sold to him. In John H. Watson, Jr., v. Commissioner of Internal Revenue, 27 B.T.A. 463, overruling Henry P. Werner v. Commissioner of Internal Revenue, 15 B.T.A. 482, it was held that the payment at maturity, of the face amount of bonds purchased at a premium, was not a sale or exchange resulting in a capital loss. If the full satisfaction of an obligation does not constitute a sale or exchange, neither does partial satisfaction. Cases wherein it was sought to bring leases of oil lands within the meaning of the phrase "sale or exchange" though not directly in point on the facts, illustrate the proposition that the words in question can be applied only to transactions falling within the ordinary meaning of such words and not to transactions embraced only in an unusual signification: Burkett v. Commissioner of Internal Revenue (C.C.A.) 31 F. (2d) 667; Berg v. Commissioner of Internal Revenue, 59 App.D.C. 86, 33 F.(2d) 641; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. In the case last cited, speaking through Mr. Justice Stone, the Supreme Court said:

"the statute speaks of a 'sale,' and these leases would not generally be described as a 'sale' of the mineral content of the soil, using the term either in its technical sense or as it is commonly understood. Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas." 287 U.S. 103, at page 107, 53 S.Ct. 74, 77 L.Ed. 199.

We conclude that the compromise with the maker, who was able to pay them, of promissory notes, for less than their face value, does not constitute a sale or exchange of capital assets entitling the taxpayer to a capital loss. Accordingly that part of the decision of the Board of Tax Appeals appealed from is,

Affirmed.