Argued September 30; reversed October 13, 1936

### BALLOU *v.* FISHER ET AL.

(61 P. (2d) 423)

*Carl E. Davidson,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellants.

*Robert T. Jacob,* of Portland, for respondent.

BEAN, J. The question involved in the case is whether the receipts in question are exempt from the

Oregon Intangibles Income Tax Act of 1931 by reason of the provisions of section 8, chapter 335, Oregon Laws of 1931. Section 3 of that chapter provides:

"A tax hereby is imposed upon every resident individual and corporation, which tax shall be levied, collected and paid annually at the rate of 8 per cent with respect to the taxpayer's net income as herein defined."

Subdivision 9 of section 1 defines "intangibles" as follows:

"9. The word 'intangibles' means and includes money at interest, bonds, notes, claims, demands and all other evidences of indebtedness, secured or unsecured (not including open accounts), including notes, bonds or certificates secured by mortgages, and all shares of stock in corporations, joint stock companies or associations."

Section 8 provides as follows:

"1. The term 'gross income' includes all interest and dividends derived from intangibles as defined in section 2 of this act. The amount of all such items received by the taxpayer shall be included in the gross income of the tax year in which received by the taxpayer, unless, under the methods of accounting permitted under this act, any such amounts are to be properly accounted for as of a different period.

"2. The term 'gross income' does not include the following items, which shall be exempt from taxation under this act:

(a) Interest upon obligations of the United States or its possessions, agencies or instrumentalities, which is exempt from state taxation.

(b) Amounts received by the insured as a return of premium or premiums paid by him under life insurance, endowment, annuity, inter-insurance or reciprocal contracts, either during the term of the contract or at maturity, but if such amounts (when added to amounts received before the tax year) exceed the aggregate premiums or consideration paid (whether

or not paid during the tax year) then the excess shall be included in gross income.

(c) Income not lawfully taxable by the state of Oregon.''

The two contracts are identical except as to amount, and there is no dispute in regard to the amounts received by plaintiff. We mention the smaller policy, and what we say applies to both.

Taking the policy for the smaller amount, the Penn Mutual Life Insurance Company of Philadelphia agrees to pay Oscar B. Ballou, the annuitant, a life income of $600 per annum in equal annual payments during the life of the annuitant. The company further agrees, upon receipt of due proof of death of the annuitant, and delivery of the policy, to pay to the beneficiary named, and in accordance with the provisions of the beneficiary section, copy of which is attached to the policy, $20,000, therein referred to as the principal sum together with a proportionate income payment for the period from the last regular income payment to the date of settlement. The policy further provides:

"Participation. All life income payments, including the proportionate income payment upon the death of the annuitant, will be increased by additions at such rates as may be annually determined by the Board of Trustees.

"Consideration. This contract is made in consideration of the payment in advance to the Company at its Home Office of the sum of Twenty-one Thousand and 00/100 Dollars, at the date hereof.''

The usual provisions are attached on the second page of the policy. It is explained by the testimony of an officer of the company, which is not contradicted, that the $1,000, or $50 on a thousand, was for "loading charge," for putting the business on the company's books. This $50 per thousand, or $1,000 paid on the

smaller policy appears to have been paid by the plaintiff as a compensation for transacting the business, and no doubt the solicitor was interested in this amount. It is not to be returned to the plaintiff in any event, as premium, or in any other way. That amount may be deleted from the consideration of the case.

Plaintiff contends that the contract is one of the kinds enumerated in the statute and that the amounts received in 1932 and 1933 were returns of premiums paid under such contracts. Defendants contend that the contracts are not within the statute and that the amounts received by plaintiff were not "return of premium or premiums".

The premiums paid by plaintiff under the contract are embraced in the $20,000. No further payments or premiums were required. After the payments were made, which the plaintiff termed a return of premiums, the $20,000 remained intact; no part of that was returned. If there was a part of the premium returned the amount paid to the company would be reduced. Taken on its face, the company, for the consideration for starting the business or putting it on its books, or for overhead, takes the money of plaintiff and agrees to pay him $600 per annum, or 3 per cent on the amount paid on the policy, after deducting $1,000, to which is added to the life income payment such amount as may be annually determined by the board of trustees, which is evidently a provision for the participation in the profits of the company. The 3 per cent and dividends are practically interest on the investment.

Section 8, subd. 2 (b), quoted above, provides for the exemption of amounts received by the insured as a return of premium or premiums paid by him under life insurance, endowment, annuity, interinsurance or

reciprocal contracts. No part of the payments made by the company and received by plaintiff during the years 1932 and 1933 was return of premiums. We think the statute is plain in this regard. The receipts mentioned are not exempt under the terms of the statute.

■ It is practically immaterial what cognomen we attach to these contracts. The law will look behind the name of the contracts. We are inclined to the belief that discussion of the exact kind of policies or combination of policies does not assist in solving the problem involved. We think, however, that the contracts with the Penn Mutual Life Insurance Company, under which plaintiff received the payments in question, are not life insurance or annuity contracts within the meaning of section 8, chapter 335, Oregon Laws of 1931.

■ It is well settled that a statute granting exemptions from taxation is to be strictly construed. In 2 Cooley on Taxation (4th Ed.) § 672, we read:

"An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction." See also *Kappa Gamma Rho v. Marion County,* 130 Or. 165 (279 P. 555).

The purpose of all interpretation and construction of statutes is to ascertain the meaning and intention of the legislature in order that the same may be enforced: Black on Interpretation of Laws (2d Ed.) 46, § 24.

The question is, did the payments under the contracts represent income to the plaintiff, and, if so, does the statute exempt such income? It seems to us that payments made to plaintiff under the contracts were just as much pure income, and not a return of premiums, as they would have been had plaintiff gone to a bank or trust company and given it $20,000, to invest

for him and the bank or company had agreed to pay him 3 per cent interest or income on the $20,000, and a portion of the earnings, subject to a payment by him of overhead of $50 per thousand, or $1,000, and the bank or company had paid him the 3 per cent. Such a transaction would be no different in legal effect than the one under consideration.

At any time after the investment of the capital of $21,000, plaintiff could recover $20,000 upon demand. This amount was to remain the same the balance of his life. In the execution of these contracts there was no physical examination, as is usually required to obtain a policy of life insurance; no proof of his age was required, and no risk was taken by the company. The death of plaintiff merely fixed the time for the payment of the policies, if no arrangement had been made for payment in accordance with the options permitted by the terms of the policy.

A contract which provides for a return of the consideration paid is not a life insurance or annuity contract: Vance on Insurance, (2d Ed.) 57; *Chisholm v. Shields,* 67 Ohio St. 374 (66 N. E. 93) ; § 46-101, Oregon Code 1930. Vance on Insurance, (2d. Ed.) 57, defines insurance as follows:

"Any contract by which one of the parties for a valuable consideration, known as a premium, assumes a risk or loss or liability that rests upon the other, pursuant to a plan for the distribution of such risk, is a contract of insurance, whatever the form it takes or the name it bears."

Section 46-101, Oregon Code 1930, defines insurance as follows:

"Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury."

We quote from *Chisholm v. Shields,* supra, as follows:

"An annuity, as understood in common parlance, is an obligation by a person or company to pay to the annuitant a certain sum of money at stated times during life, or a specified number of years, in consideration of a gross sum paid for such obligation; and this, in substance, is the kind of annuity covered by said sections of the statute. In such an annuity there is no connection, in a tax sense, between the annuity and the gross sum paid therefor."

In *State ex rel. Thornton v. Probate Court,* 186 Minn. 351 (243 N. W. 389), the court held that such a contract was not a life insurance contract within the meaning of the inheritance tax statute. The court said:

"Although the contracts here in question have features in common with ordinary life insurance policies, their true effect and scope are vastly different. It cannot well be denied that the $90,000 Thornton paid to these companies remained virtually at his disposal, use, and control as long as he lived and passed at his death to the beneficiaries he named. True, the money he paid became the property of the companies, but they guaranteed to him a certain percentage of earnings thereon each year and agreed to pay him specified annuities each year, together with such dividends as might be earned and allocated to the fund his $90,000 helped to create. As long as he lived he had the right, upon notice, to have $90,000 returned. It seems to us this $90,000, under these contracts, stands precisely in the same relation to him as if he had deposited that amount in a bank under a contract similar to one of these. There would be an obligation to pay the whole sum paid or deposited to him, if demanded in his lifetime, and to appoint beneficiaries upon his death. This obligation was an estate or property right of his to which the beneficiaries named succeeded at his death, and is subject to the tax."

■ Exemption from taxation must rest upon some substantial difference between the income exempted and that taxed: Cooley on Taxation (4th Ed.) 1373, § 653.

The contracts in question partake of some of the features of life insurance and a semblance of an annuity contract.

Plaintiff cites *Briggs v. McCullough,* 36 Cal. 542. The contract involved in that case was plainly one of endowment and the element of risk was present, as the promisee's beneficiary might receive a much greater amount than the amount of the consideration should the promisee die shortly after the making of the contract. An endowment policy is one of life insurance.

■ Under the provisions of these favorable contracts evidencing the investments, the plaintiff received a cash income which left his principal unimpaired. The receipts were income to him in every sense of the word. He had the benefit of the protection of the state and its laws, and it is entirely appropriate that he should contribute by a tax upon the receipts in question.

The preamble of the Intangibles Income Tax Act indicates the policy of the law. We quote as follows:

"Whereas the ownership and possession of intangible personal property represents a benefit under the protection of government which appears not less valuable and secure than that enjoyed in the ownership and possession of property of any other class or kind; and

"Whereas the income consistently derived from intangible personal property represents a distinct taxpaying ability which, in justice and sound reason, should bear a fair share of the cost of government; * * *"

The decree of the circuit court is reversed, and it is directed that one be entered in favor of defendants to the effect that (1) defendants recover from plain-

tiff the sum of $174.60 additional intangible income taxes for the year 1932, plus a penalty of 5 per cent thereof, and interest at the rate of 1 per cent per month from March 31, 1933, until paid; (2) the sum of $174.60 additional intangible income taxes for the year 1933, plus a penalty of 5 per cent thereof, and interest at the rate of 1 per cent per month from March 31, 1934, until paid, and for defendants' costs and disbursements.