GODFREY M. DAY *v.* WALTER W. WALSH, TAX COMMISSIONER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued January 4—decided April 3, 1945.

*Lillian L. Malley,* for the plaintiff.

*Louis Weinstein,* inheritance tax attorney, with whom, on the brief, were *Francis A. Pallotti,* attorney general, and *Frederic W. Dauch,* deputy tax commissioner, for the defendant.

MALTBIE, C. J. This case presents the question whether a succession tax is due from the estate of Katherine B. Day based upon payments to certain persons named as beneficiaries in an agreement entitled a life insurance policy which the executors claim to be exempt under § 487c of the 1935 Supplement to the General Statutes. On May 20, 1937, Mrs. Day applied for and obtained the policy in the amount of $40,000, paying therefor a single premium of $37,670. One-fourth of the sum to become due at her death was payable to each of her four children, his or her children, or, if none, to Mrs. Day's issue per stirpes. She reserved the right to change the beneficiaries. The policy contained the usual provisions as to loans upon it and as to its surrender in accordance with a table of cash values stated in it. On the same day the policy was issued, the insurance company, in consideration of a premium of $6330, made an annuity contract with Mrs. Day in which it agreed to pay her during her life $83.68 each month. No physical examination was required of her as a condition for the making of either agreement. She was eighty-three years and nine months of age when the agreements were made and had a life expectancy of 3.89 years. Neither agreement made any reference to the other, and the life policy could have been surrendered at any time after its issuance, without regard to the annuity contract. The company would not, however, have issued the life insurance policy had Mrs. Day not also entered into the annuity contract; but she did not make any inquiry as to this fact nor was she informed of it. The company treated separately the premium paid for the life policy and that received for the annuity contract, crediting each to the appropriate account, and so reported to the insurance commissioner. In the years 1935 to 1937 the company issuing the policy earned a little over

3.5 per cent on its ledger assets. Mrs. Day died about five and one-half years after the agreements were made, and the amount due on the policy was paid to the children named in it as beneficiaries. They were also named as the residuary legatees in her will. For some years prior to her death, two of them had been receiving financial assistance from her in the form of monthly allowances.

Section 486c of the Cumulative Supplement to the General Statutes, 1935, now amended by § 395e of the 1939 Supplement, specifies the transfers of property by will or otherwise which are subject to a succession or transfer tax, including gifts or grants intended to take effect in possession or enjoyment at or after death. Section 487c of the 1935 Supplement states that "The provisions of section 486c shall not apply to the proceeds of any policy of life or accident insurance payable to a named beneficiary or beneficiaries"; but, subject to a certain exception, the proceeds of policies payable to the estate of the insured, or to the executors of his will or administrators of his estate, are taxable. There can be no question that, if regard be had only for the literal provisions of the policy before us, it is a policy of life insurance and its proceeds would be exempt from taxation under this statute.

The tax commissioner claims, however, that if we look beyond the words of the policy to the actual situation the agreement between Mrs. Day and the company will be found to lack the elements essential to a policy of life insurance; and, in support of his contention that the proceeds of the policy are taxable, he cites *Helvering* v. *Le Gierse*, 312 U. S. 531, 61 Sup. Ct. 646, and *Estate of Keller* v. *Commissioner*, 312 U. S. 543, 61 Sup. Ct. 651. The first of these cases presented a situation practically identical with the one before us, and the second, one which did not sub-

stantially differ, and in each it was held that the proceeds of the policy in question were not deductible in determining the federal estate tax as an amount "receivable by . . . beneficiaries as insurance under policies taken out by the decedent upon his own life." 44 Stat. at Large, Pt. 2, p. 71, § 302(g); 26 U. S. C. § 811(g). These decisions resolved a disagreement between the Circuit Court of Appeals for the Second Circuit and that for the Third Circuit. In the first case cited above, the former court had unanimously held that the proceeds of the policy in question were deductible. *Commissioner of Internal Revenue* v. *Le Gierse*, 110 Fed. (2d) 734; and, in the second case, the latter court held that the proceeds of the policy involved in that action were not deductible. *Commissioner of Internal Revenue* v. *Keller's Estate*, 113 Fed. (2d) 833. A similar decision to that in the last case had already been made by the Circuit Court for the Eighth Circuit. *Helvering* v. *Tyler*, 111 Fed. (2d) 422. While the language of our statute is not identical with that of the federal law, there is no substantial difference; and the disagreement between the courts to which we have referred has required that we study the question before us with great care.

That question is, what intention has the legislature expressed by the use of the words "any policy of life or accident insurance." In attempting to ascertain that intention, we must not seek to ascribe to the General Assembly too great "a subtlety of discrimination." *Jewett City Savings Bank* v. *Board of Equalization*, 116 Conn. 172, 183, 164 Atl. 643. On the other hand, we must not be misled by the form of the agreement before us but must look to the substance of the transaction; "Whether a contract is one of insurance is determined from its contents and not merely from its terminology"; *Ollendorff Watch Co., Inc.* v. *Pink*,

253 App. Div. 73, 75, 300 N. Y. S. 1175; *State ex rel. Thornton* v. *Probate Court*, 186 Minn. 351, 355, 243 N. W. 389; and, whether or not, as between Mrs. Day and the company, the two agreements could be read together, the tax commissioner is entitled to have us look through them to their actual effect and judge them accordingly. *Pearson* v. *McGraw*, 308 U. S. 313, 317, 60 Sup. Ct. 211. As was said in *Helvering* v. *Tyler*, supra, 426, "It is the duty of the court to look through the mere form of such an agreement as that before us and to compel taxation in accord with the substance and reality of a transaction." Our first inquiry, then, must be to ascertain the essential elements which characterize a true life insurance policy and which differentiate it from other similar contracts.

In *Helvering* v. *Le Gierse*, supra, it is said (p. 539) that the essentials of life insurance are risk-shifting and risk-distributing. In such a situation as the one before us, it might be arguable that there is a certain shifting of risk. The beneficiaries named in the policy were Mrs. Day's heirs-at-law and the residuary legatees under her will, and two of them had been receiving monthly allowances from her; and, by the device of the policy, they would presumably receive the money it represented much more promptly than it could come to them through the settlement of her estate. Moreover, through the issuance of the policy, they were saved the risk of loss through poor investments and the like which might deplete the estate of a woman of her advanced years. Such possible benefits accruing from the issuance of the policy are not those commonly incident to insurance policies taken out by a person upon his own life. Moreover, risk-shifting may or may not be present where a person takes out such a policy. It may be made payable to a person or persons who are dependent upon him for support

or assistance; but, on the other hand, every man has an insurable interest in his own life and he can make a policy which he takes out upon it payable to whom he will, though no economic loss will come to the beneficiaries by his death. *Allen* v. *Hartford Life Ins. Co.*, 72 Conn. 693, 696, 45 Atl. 955; 1 Cooley, Briefs on Insurance (2d Ed.), p. 336. In such a case, there is no shifting of the risk, in any real meaning of the word, and "risk" means no more than the contingency of the death of the insured. See *Sigal* v. *Hartford National Bank & Trust Co.*, 119 Conn. 570, 574, 177 Atl. 742; *Dalby* v. *India & London Life-Assurance Co.*, 15 C. B. 365, 386; Vance, Insurance (2d Ed.), p. 81. The social sanction which justifies the making of a policy upon one's own life payable to persons who may not suffer economic loss from one's death must be found in the fact stated by *Holmes, J.,* in *Grigsby* v. *Russell*, 222 U. S. 149, 156, 32 Sup. Ct. 58, that "life insurance has become in our days one of the best recognized forms of investment and self-compelled savings." See Vance, op. cit., pp. 26, 123.

We cannot accept risk-shifting as an essential characteristic of life insurance. Professor Vance, at the very beginning of the work last cited (p. 2), as appears in the footnote,[1] lists five elements which distinguish

---

[1] "The contract of insurance, made between parties called the insured and the insurer, is distinguished by the presence of five elements:

(a) The insured possesses an interest of some kind susceptible of pecuniary estimation, known as an insurable interest.

(b) The insured is subject to a risk of loss through the destruction or impairment of that interest by the happening of designated perils.

(c) The insurer assumes that risk of loss.

(d) Such assumption is part of a general scheme to distribute actual losses among a large group of persons bearing similar risks.

(e) As consideration for the insurer's promise, the insured makes a ratable contribution to a general insurance fund, called a premium.

A contract possessing only the three elements first named is a risk-shifting device, but not a contract of insurance, which is a risk-distributing device; but, if it possesses the other two as well, it is a contract of insurance, whatever be its name or its form."

a policy of insurance from other similar contracts. The first three, he says, may also be present in other agreements, and, we may add, may not be present, as we have shown, in such policies as the one before us. It is really the last two elements he refers to which essentially distinguish insurance from other somewhat similar transactions. These are that the·policy is issued in pursuance of a general scheme to distribute losses among a large group of persons in the same class, and that each person in the class is required to make a ratable contribution to the general fund from which the losses are paid. *Ritter* v. *Mutual Life Ins. Co.*, 169 U. S. 139, 151, 18 Sup. Ct. 300. Where a person takes out a policy of insurance upon his own life, "loss," as used in the statement above, must, for the reasons we have given, be understood to mean no more than the sum payable upon the contingency of death. So understood, the essential elements of life insurance as regards a policy issued upon one's own life become clear. The conception of life insurance commonly accepted is this: It is an agreement wherein the insured makes a payment or, more usually, agrees to make periodic payments, known as premiums, to an insurance company, in return for which, upon his death, it agrees to pay to those persons whom he designates as beneficiaries a definite sum of money; this it can do even though the premiums he has paid do not, with their increment by investment, equal the sum paid on the death of the insured, because the payment is to be made from a general fund into which go the contributions of many persons in the same class; and the amount each of these pays is based upon such probabilities of the continuance of life that the aggregate of contributions by the whole group, with its increment from investment, will suffice to meet all demands for payments at death, whether death comes

early or late. *People ex rel. Metropolitan Life Ins. Co. v. Knapp,* 193 App. Div. 413, 415, 184 N. Y. S. 345. It was no doubt such a conception that the legislature had in mind when it enacted the provision in question.

The effect of the transaction before us, if we regard, as we must, the two agreements before us as parts of a single plan, was that Mrs. Day paid to the insurance company the aggregate sum of $44,000, in return for which it agreed to pay her an annuity of $83.68 each month so long as she lived, and at her death to pay to such beneficiaries as might be named the sum of $40,000. The chance that it would have to pay the amount due upon the insurance policy before the premium paid, with its increment by investment, equalled the face value of the policy was offset by the fact that on her death annuity payments would cease; and the only apparent chance that the company would be called upon to pay out more than it had received would be that its investments did not earn as much as it had anticipated. The possibility that it would have to fall back upon premiums paid by other insured to make up the sums to be paid under the agreements is too remote to characterize the transaction as involving risk-distribution or as amounting to true life insurance. See *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 102 Fed. (2d) 380, 382; *Ballou* v. *Fisher,* 154 Ore. 548, 554, 61 Pac. (2d) 423; *State ex rel. Thornton* v. *Probate Court,* supra, 355. We have no doubt that, as stated in *Commissioner of Internal Revenue* v. *Le Gierse,* supra, 735, "A taxpayer is privileged to decrease the amount of what otherwise would be his taxes by means which the law permits." On the other hand, we are justified in assuming that the legislature could not intend to pave the way for the easy avoidance of a tax it imposed and in scrutinizing with care any apparent attempt to do so to see whether

it is fairly within the legislative intent. The arrangement between Mrs. Day and the insurance company in this case not only lacks certain elements ordinarily incident to life insurance as commonly understood but it serves only to a relatively slight degree either of the main purposes of insurance: protection of those who might suffer an economic loss by the death of the insured and savings for the future. It is our conclusion that the legislature did not intend to include in the words "the proceeds of life or accident insurance payable to a named beneficiary or beneficiaries" such a policy as the one here in question.

The plaintiff suggests that the proceeds of policies of life or accident insurance payable to named beneficiaries are not taxable as a "gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor," altogether apart from the provisions of § 487c. That contention undoubtedly accords with the great weight of authority. Note, 150 A. L. R. 1285, 1288. But it does not apply to the transaction before us, which is not one of true life insurance. See *Gregg* v. *Commissioner of Corporations & Taxation*, 315 Mass. 704, 54 N. E. (2d) 169. The situation in this case much more nearly approximates that of a trust with income payable to the settlor during his life and the principal payable to certain named persons at his death, subject, however, to his power to end the rights of any person so named; and in case of such a trust the sums received by the beneficiaries are taxable as gifts intended to take effect in possession or enjoyment at death. *Cochran* v. *McLaughlin*, 129 Conn. 176, 182, 27 Atl. (2d) 120. So, in this case, we hold that the sums due at Mrs. Day's death to the beneficiaries named in the insurance policy are subject to the succession tax.

To the first question propounded in the reservation,

asking whether the proceeds of the insurance policy
are subject to our succession tax and transfer tax as
a gift or grant to take effect in possession or enjoyment
at death, we answer "Yes." To the second question,
asking whether the proceeds of the policy are excluded
from the provision for taxing such transfers by the
provisions of § 487c of the Cumulative Supplement of
1935, we answer "No."

No costs will be taxed in this court to either party.

In this opinion BROWN, ELLS and DICKENSON, Js.,
concurred.

JENNINGS, J. (dissenting). It seems to me that the
fair and complete description in the majority opinion
of the contracts entered into by the decedent leads
inevitably to the conclusion that the proceeds of the
policy are excluded by the provisions of § 487c from
the class of taxable transfers described in § 486c. The
majority opinion admits that a literal interpretation
of the contracts brings about this result. It reaches
a contrary conclusion on the ground that the contracts
were not entered into in pursuance of a general scheme
to distribute losses among a large group of persons in
the same class who individually make ratable con-
tributions to the general fund from which losses are
paid, emphasizing the annuity feature. It rejects the
basic holding of the case of *Helvering* v. *Le Gierse,*
312 U. S. 531, 61 Sup. Ct. 646, that the test is risk-
shifting and risk-distributing. The reasoning of the
opinion seems to me strained and to lead to an errone-
ous conclusion. The sum of $40,000 sought to be taxed
is the proceeds of a policy of life insurance payable
to named beneficiaries within the meaning of § 487c.
The meaning of the statute is plain and no other

means of interpretation are called for. *Swits* v. *Swits,* 81 Conn. 598, 599, 71 Atl. 782.

The fact, if true, that the decedent was trying to save inheritance taxes is irrelevant. One of the rules of the game of tag always being played by the tax collector and taxpayer is that "A taxpayer is privileged to decrease the amount of what otherwise would be his taxes by means which the law permits." *Commissioner of Internal Revenue* v. *Le Gierse,* 110 Fed. (2d) 734, 735. The failure to observe this rule is, in my opinion, an important factor in the conclusions reached in the majority opinion and many of the cases relied on therein.

No useful purpose would be served by writing a dissent as long as the opinion when the reasons therefore can be given by reference. I rely, as do the dissenters in *Helvering* v. *Le Gierse,* supra, on the reasoning of Judge Swan in *Commissioner of Internal Revenue* v. *Le Gierse,* supra, and on the excellent brief filed by the plaintiff. The latter is available to Connecticut lawyers. The difference in phraseology between the federal and state acts, the difference in policy with reference to the taxation of insurance and the fact that the federal tax is imposed upon the transfer of property of the decedent while the state succession tax statutes levy an excise upon the beneficiary for the privilege of succession to property, noted therein and not discussed in the majority opinion, are particularly significant.

The results which will follow a decision may be of assistance in determining the legislative intent. *Conners* v. *New Haven,* 101 Conn. 191, 199, 125 Atl. 375. If the literal meaning of the statute is followed, resulting in a holding that the sum is not taxable, and the General Assembly desires to tax contracts of this character, it can easily do so by amendment. The

complications which will result from the holding of the majority opinion are such that the determination of tax liability on differing states of fact may cause years of litigation. Some of the possibilities are noted in 49 Y. L. J. 946, 952.

For the reasons stated, I think the proceeds of the life insurance policy in question are not taxable.