LOUISA COUNTY NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47273. Promulgated January 31, 1933.

*M. J. Holland, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

#### OPINION.

LANSDON: The respondent has asserted a deficiency of $921.91 in income tax against the petitioner for the year 1927. The only issue involved in this appeal from that determination is whether or not the petitioner sustained a deductible loss through an enforced liquidation of its assets and capital stock in that year.

The petitioner is a national banking corporation located at Columbus Junction, Iowa. The par value of its capital stock is $50,000, divided into 500 shares. On June 9, 1927, petitioner's board of directors, through proper corporate action, suspended its business and turned all of its assets over to a national bank examiner for liquidation. At the time of the taking over by the examiner the book value of petitioner's assets was $88,569.68, but only the cash included therein, amounting to $10,800, was considered by the examiner to be bankable assets. After a thorough examination the examiner determined that petitioner's bank might be reopened under certain conditions. These conditions required the stockholders to surrender for cancellation all of their stock certificates, in consideration of the distribution to them of the assets of the bank, and the reissuance and sale of said stock for $125 per share, payable in cash.

Surrender, reissue and sale of the 500 shares of the bank stock were accomplished in accordance with the receiver's plan, and on July 7, 1927, a meeting was held by the new stockholders, at which they elected a new board of directors for the corporation. On July 8, following their election, petitioner's new board of directors held

a special meeting and took action to reopen the bank. Among other things the board adopted a resolution which provided for the elimination of all of the petitioner's nonbankable assets and their liquidation and distribution among the old stockholders. For this purpose the assets were transferred to three of their number under a trust agreement executed by them as parties of the first part, representing the so-called "new bank," certain of the members of the former board representing interests referred to as the "old bank," as parties of the second part, and the trustees, parties of the third part. This instrument recited by way of inducement that the shareholders had voluntarily surrendered their stock in the "old bank" for resale in lieu of paying an assessment of 100 per cent on the same, and that in consideration of such surrender it was desired to convey to said shareholders certain assets formerly a part of the total assets of the "old bank" as at the close of business June 9, 1927. It then recited that the first party had assigned, etc., to the parties of the third part, certain assets of the "old bank" (as per list attached); but, under conditions which gave to the "new bank" the right, at its election, for a period of two years, to withdraw any assets it might select and substitute in their stead an "equal amount" of assets of the "old bank," that it had theretofore withheld and taken into its capital at the time of its recapitalization. The assets were to be so held for a two-year period, at the end of which the trustees were to liquidate the trust assets; and, after first paying all costs, including the taxes, current expenses, salaries and examiner's fees of the "old bank," distribute the net proceeds ratably among the old stockholders. The trust estate was still in administration at the date of the trial of this cause, but cash dividends representing 30 per cent of the par value of their stock had been paid to the old stockholders by the trustees from receipts of assets collected or sold thus by them.

The petitioner contends that the process followed was in effect a sale of its assets to its old stockholders in consideration for their surrender of their stock for cancellation and reissue. There is nothing in the record here to support this theory, or to show that it sustained a loss through the process followed in the taxable year. In the situation which prevailed in petitioner's affairs, after the bank examiner took charge on June 9, 1927, there was no opportunity of election left either to it or its stockholders to barter or sell its stock or assets. The examiner was in full charge and complete control of its affairs. Neither the conditions he imposed for reopening the bank nor the methods adopted by the board contemplated an immediate passing either of title to or beneficial interest in the assets to the old stockholders. Although the declaration of trust stated, by way of inducement, that it was "desired" to convey to the old

shareholders the "old bank" assets, the condition which provided that the trust to be established "shall be in the nature of a revolving fund" over which, for a period of two years, the "new bank" should have the unrestricted right to take out and put back any assets that it desired in working out its recapitalization needs, prevented any present transfer other than to the trust, with contingent remainder to the stockholders.

The old stockholders, so far as the record shows, were not consulted in the arrangement made to liquidate their stock and reorganize their corporation. That was all done by the board of directors, acting under the mandates of the bank examiner. The trust scheme as devised was accepted by them to serve the single purpose of reorganization. It provided a vehicle through which the nonbankable assets could be eliminated from the bank's capital and held in suspense for a period of two years, during which time any part or parcel of it could be returned through substitution. The trust was primarily intended to serve the interests of the bank and not the stockholders. In no event could the stockholders receive any benefits from the trust before two years after the execution of the trust instrument.

The petitioner argues that the bank "disposed of property that cost it $98,569.68, receiving therefor $62,500" through which it sustained a loss of $36,069.60 in 1927. Whatever else may be said of the transaction we have discussed, it is clear, as pointed out, that the power of control over the assets which the petitioner reserved to itself through the "revolving fund" clause in the trust agreement, and the withholding of any benefits from the stockholders for a period of two years, are inconsistent with any theory of a sale of them to the stockholders. It is therefore erroneous to say that the petitioner disposed of its interests in such property at the instant the trust was created.

The trust agreement also provided that the taxes, current expenses, salaries and examiner's fees of the "old bank" should be a first charge against the assets of the trust and that their prior payment was a condition to any distribution of the assets to the stockholders. There is no evidence as to the amount of these charges, but whatever they were they constituted debts of the petitioner which, when paid, *pro tanto* increased the sum realized by it in the liquidation of its assets. We therefore are unable to say, even should we hold the transaction to be a sale, that the petitioner sustained a loss as alleged.

The petitioner has wholly failed to prove that it sustained the loss contended for in the taxable year and the determinations of the respondent are therefore approved.

*Decision will be entered for the respondent.*