THOMAS, Collector of Internal Revenue, v.
PERKINS et ux.

No. 9206.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1939.

Maurice J. Mahoney, Sp. Asst. to the Atty Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and John A. Erhard, Asst. U. S. Atty., of Dallas, Tex., for appellant.

Harry C. Weeks, of Fort Worth, 'Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover income taxes paid for the year, 1935. The claim was that an ascertained loss in that year on account of certificates of indebtedness, issued by the Creditors' Committee of American Refining Company, Inc., et al., was a bad debt loss, and deductible for the full amount, $153,030.15. The defense was that, it was within the provisions of the Revenue Act of 1934, 48 Statutes, 711–714, §§ 115–117, 26 U.S.C.A. §§ 115, 116, 101, a capital loss and the deduction on account of it, was limited to $2,000. The District Judge took plaintiff's view and gave judgment for the amount sued for. From the admissions in the pleadings and the undisputed facts, it appears; that in 1927, the affairs of the American Refining Co., Inc., a Delaware Corporation, a partnership known as American Refining Co., and the seven individuals who composed that partnership had become seriously involved, the Corporation owing more than $4,300,-000, the partnership, $2,450,000, and the individuals, $2,983,000. To cope with this situation and salvage what they could out of it for their debts, a Creditors' Committee was formed, to take hold, under a declaration of trust, of all of the assets of the company, the partnership and the individuals, as an entirety, without distinction between partnership, individual and corporation, and liquidate them to pay

the indebtednesses of the various debtors. To accomplish this, full power was conferred upon the Committee to sell the properties and pay the debts. Consenting creditors were issued certificates which were to be: "a renewal and extension of the obligation", on which the certificate was issued, and not a "novation or substitution of said certificate for the obligation." Secured creditors were given Class-A Certificates, which continued their liens in force. Unsecured creditors were given Class-B Certificates, payable with interest, three years after date, out of the assets held by the Creditors' Committee.

Each certificate reciting that it was given in lieu of a described indebtedness, particularly set out the indebtedness it extended and renewed. Each certificate contained provisions for its transfer, and further provided "any payment on this certificate shall be endorsed thereon; and upon payment in full, it shall be surrendered to the Creditors' Committee for cancellation."

At the time the Committee took over the properties the combined claims were in excess of $6,000,000, and the combined value of the properties was around $4,000,-000. It was definitely understood, throughout its administration, by creditors and debtors alike, that the Committee was purely a liquidating Committee, and throughout, the only activities it engaged in, were those required for the conservation and liquidation of the properties.

Appellees, between April of 1929 and October of 1931, purchased for cash, at a cost of $185,333.05, Class-B Certificates of the face value of $420,604.22, and when in November, 1935, the Creditors' Committee sold for cash, all remaining assets, in its hands, and made payment pro rata in accordance with the terms of the declaration of trust upon the certificates of indebtedness, appellees were paid on account of their certificates, $32,283. Thereafter, the corporation debtor dissolved, the individual debtors insolvent, and all the properties to which they might look for the payment of the indebtedness they held, disposed of in liquidation, appellees charged off as an ascertained bad debt loss, the difference between the amount paid for, and that received on account of, the certificates, $153,-030.15; and in their income tax returns for that year, deducted it as such.

The Commissioner rejected the claimed deductions, upon the theory that the Creditors' Committee was an Association, taxable as a corporation, that the appellees as holder of the certificates, were stock owners of the corporation, and that the amounts received on account of them, were not payments on debts, but distributions in liquidation of a corporation within Section 115, Revenue Act of 1934, 26 U.S.C.A. § 115(c), and therefore a capital loss and limited, by Section 117 of the Act, 26 U.S.C.A. § 101(d) to $2,000 for each appellee.

The District Judge found; that the Creditors' Committee was not a corporation or an association, but merely a trusteeship for the purpose of liquidating the properties to pay debts; that the certificates were not stock certificates, evidencing stock ownership, but evidences of debt; and that when in 1935, the debtors being insolvent, the property to which the creditors might look for payment of their debts, was finally and completely disposed of, and final payments were made on the certificates of indebtedness, the loss then ascertained, was not a capital loss limited to $2,000, as claimed by the defendant, but a bad debt loss for the full amount as claimed by plaintiffs. He gave judgment accordingly.

Here, appellant testing the findings and judgment for error, mainly insists: that, the Creditors' Committee, operating as "American Refining Properties", was operating, and taxable, as a Corporation, and that the certificates evidenced stock ownership, and not indebtedness. A secondary point made by it is, that if the Creditors' Committee was not an association, taxable as a corporation, and the certificates did not evidence stock ownership, but indebtednesses, the judgment was still wrongly entered, because, Sec. 117, Revenue Act of 1934, Sec. 101(f), 26 U.S.C.A., provides, "amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation * * * with interest coupons or in registered form, shall be considered as amounts received in exchange," and the evidence establishes; that the certificates, of indebtedness, were evidences of indebtedness issued by the corporation, American Refining Co., Inc.; and that the amounts received by appellees, were "received upon the retirement thereof."

Appellee insists that appellant may not raise this point here, because it was not raised below, when if it had been raised, appellee could have made fuller proof as to the particular indebtedness renewed and extended by the certificates they held

It insists further, however, that though, not proper to be considered, because not raised below, if considered, it is wholly without merit because: (a) the record clearly and affirmatively shows the nature of the certificates of indebtedness and by whom they were issued; and that they cannot in any sense be said to be certificates of indebtedness of a corporation within the invoked section; and (b) if they are such certificates, they have not, within its meaning, been retired.

■ Agreeing with appellee that the point is without merit, that no sort of strained construction of the invoked section will permit its application to appellee's certificates, and the payments on them, we pass to a consideration of the appellant's main point. This is, that the certificates are not of debt ownership evidencing a debtor creditor relation, but of stock ownership, evidencing a stock holding relationship.

We think it quite plain that construed on their face alone, entirely apart from the interpretative facts which antedated and attended their issuance, the certificates cannot reasonably be construed as stock certificates, evidencing a stock ownership. They recite that they "shall constitute a renewal and extension of the obligations for which they are issued, and shall not constitute a novation or substitution of said certificates for said obligations." They have a fixed maturity. They provide for payment of interest semi-annually. They provide that no certificate holder "shall, at any time, have any claim, legal or equitable, in or to the property acquired by the Creditors' Committee * * * but only in the net profits thereof, as such property may be liquidated * * * and only when and as such proceeds may be distributable under the discretion of the Creditors' Committee." Providing for payments, not distributions, the certificate reads, "any payment on this certificate shall be endorsed thereon, and upon payment in full thereof, it shall be surrendered."

■ Such recitations are wholly inconsistent with the theory of stock ownership. They are consistent with a debtor creditor relationship. Indeed, they are inconsistent with any other. Cf. United States of America v. South Georgia Railway Co., 5 Cir., 107 F.2d 3. But, if, standing alone, and subjected to a strained construction, the certificates might be construed as of stock ownership, construed

in the light of the undisputed facts, as to the formation and conduct of the Committee in the gathering up and administration of the assets, and the issuance of the certificates as a renewal and extension of existing debts, it is impossible, we think, to construe them as anything other than they say they are, certificates of indebtedness, unreasonable to find that the loss sustained on account of them was other than a bad debt loss.

The judgment was right. It is affirmed.