### AVERY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9107.

Circuit Court of Appeals, Ninth Circuit.
April 12, 1940.

---

Dana Latham and Richard W. Lund, both of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner seeks review of a decision of the Board of Tax Appeals redetermining a deficiency in income tax for the year 1935 in the amount of $1,375.68.

The Board held (1) that the difference between the single premium payment and the sum of the amounts received by the petitioner prior to and upon maturity of an insurance policy was not capital gain but ordinary income, and (2) that interest received upon certain street improvement bonds was not exempt but taxable.

The insurance policy, taken out in 1925 upon payment of a single premium of $23,-069.75, carried both endowment and death provisions, the insurer agreeing to pay $25,-000 on April 27, 1935, to petitioner (described as "the Insured") if then living, or to certain named persons or the survivor, or to pay $25,000 "upon receipt of due proof of the death of the Insured before the maturity of the Endowment."[1]

It is stipulated that between the date of issuance and April 27, 1935, the insurer "paid to petitioner as 'dividends' on account of said policy of insurance * * *" the

---

[1] "New York Life Insurance Company Agrees to Pay

"Endowment to Insured
to Moses N. Avery, the Insured
Face Amount
(the face of this Policy) Twenty-five Thousand Dollars on the twenty-seventh day of April, Nineteen Hundred and Thirty-five, if the Insured is then living; or to Florence L. and Lewis G. Avery, share and share alike or to the survivor
*      *      *      *      *
Insurance Payable at Death
(the face of this Policy) Twenty-five Thousand Dollars upon receipt of due proof of the death of the Insured before the maturity of the Endowment.
General Benefits and Provisions

This policy contains the following benefits and provisions:
Participation in Surplus—Dividends, Section 1
*      *      *      *      *
Premium
This contract is made in consideration of the payment in advance of the single premium of Twenty-three Thousand Sixty-nine 75/100 Dollars, the receipt of which is hereby acknowledged.
*      *      *      *      *
Section 1—Participation in Surplus—Dividends

The proportion of divisible surplus accruing upon this Policy shall be ascertained annually. On each anniversary such surplus as shall have been apportioned by the Company to this Policy

total sum of $5,634, this total being made up of payments occurring at least once in each of the years subsequent to 1925 and including 1935, and that prior to the year 1935 the petitioner reported no part of this sum in his federal income tax return.

The amount received on maturity, $25,-000, plus the intervening payments of $5,-634, made a total of $30,634. The difference between this total and the single premium payment of $23,069.75 was $7,564.25. This difference the petitioner treated in his 1935 income tax return as capital gain taxable under Section 117 of the Revenue Act of 1934, and reported thirty per cent thereof, or $2,269.27, as the amount to be "taken into account in computing net income."[2] The Commissioner determined that none of the $7,564.25 was capital gain but that all was ordinary income. The Board agreed with the Commissioner.

Section 117(a) of the Revenue Act of 1934 provides that if a capital asset has been held for more than 10 years only 30 per cent of the gain "recognized upon the *sale* or *exchange*" thereof "shall be taken into account in computing net income." 48 Stats. 680, 714. (Emphasis supplied.)

The $25,000 payment was not received upon a "sale or exchange" of the endowment contract unless Section 117(f) of the Revenue Act of 1934 is applicable. Fairbanks v. United States, 306 U.S. 436, 437, 59 S.Ct. 607, 83 L.Ed. 855; Bodine v. Commissioner, 3 Cir., 103 F.2d 982, 987.

Petitioner contends that Section 117(f) is applicable and that, consequently, under Section 117(a) only thirty per cent of the $7,564.25 is to be "taken into account in computing net income."

Section 117(f) provides that " * * * amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation * * *, with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

The report of the Ways and Means Committee (73d Cong., 2d Sess. H. Rept. 704) states (p. 31) with reference to the provision enacted as Section 117(f): "Subsection (f) provides that amounts received upon the retirement of corporate bonds and *similar* evidences of indebtedness shall be considered as amounts received in exchange therefor." (Emphasis supplied.)

The gross income provisions of Section 22 of the Revenue Act of 1932 included specific and separate provisions for the treatment of amounts received under life insurance, endowment and annuity contracts and prescribed a specific formula for the computation of the portion thereof to be included in gross income.[3] Specific and separate treatment was continued in the

---

shall at the option of the Insured be either

(a) Paid in cash; or

(b) Applied to purchase a Participating Paid-up Addition to the sum insured; or

(c) Left to accumulate at such rate of interest as the Company may declare on funds so held, but at a rate never less than three per cent compounded and credited annually, and withdrawable in cash on any anniversary or payable at the maturity of the Policy to the person entitled to its proceeds.

* * * * *."

[2] Section 117(a) of the Revenue Act of 1934, 48 Stats. 680, 714, 26 U.S.C.A. Int.Rev.Acts, page 707.

[3] "Sec. [§] 22. Gross Income
* * * * *

"(b) Exclusions from Gross Income. The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

"(2) Annuities, etc. Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph; * * *." Revenue Act of 1932, 47 Stats. 169, 178, 26 U.S.C.A. Int.Rev.Acts, page 487.

22

gross income provisions of Section 22 of the Revenue Act of 1934,[4] in which Act there appeared for the first time the provisions of Section 117(f). It is apparent that at least for purposes of the gross income provisions of Section 22, Congress did not regard endowment contracts as "similar" to corporate bonds, but as so dissimilar as to warrant independent treatment.

Petitioner's contention would require us to hold that the formula provided in the first sentence of Section 22(b) (2) either is not applicable or is superfluous in instances of payment at maturity of endowment contracts. The superfluous or useless character is illustrated by the fact that the act of computing gross income under Section 22(b) (2) would be without significance because the gain of which the percentage is taken under Section 117(a) is computed by a different formula. The difference in formula is illustrated by the fact that under the first sentence of Section 22(b) (2) the minuend is the total of the amounts received in the tax year and prior years or, here, $30,634, whereas in computing capital gain the minuend could not exceed $25,000 because under Section 117(f) it is provided that "amounts received * * * *upon the retirement* of * * * shall be considered as amounts received in exchange therefor," and the most that could be considered as "received * * * *upon the retirement*

* * *" would be the $25,000 payment. (Emphasis supplied.)

We are of the view that Congress did not intend that the specific formula for computation of the gain under an endowment contract to be included in gross income, provided by Section 22(b) (2), should be either inapplicable or superfluous in the instant case.

Petitioner contends that Section 117(f) was enacted for the purpose of overcoming the principle announced in John H. Watson, Jr. v. Com'r, 27 B. T. A. 463, 465, that the loss sustained from the retirement at maturity of a corporate bond was not a capital loss because no sale or exchange was involved; that at the time of the enactment of the Revenue Act of 1934 there also was in effect I. T. 2661, XI—2 Cum. Bull. 39(1932), which provided: "The gain realized from the surrender of a combined annuity and life insurance contract held for more than two years may not be treated as capital gain and taxed under section 101 of the Revenue Act of 1932, but must be treated as ordinary income." and that the intent of Congress must have been to overcome this ruling as well as the principle announced in the Watson·case. We note that in enacting Section 117(f) Congress expressly used the word "bond". If it had intended that Section 117(f) should apply to endowment contracts we are entitled to assume that it also would have referred in

---

4 "Sec. [§] 22.  Gross Income
*        *        *        *        *

"(b) Exclusions from Gross Income. The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

"(2) Annuities, etc. Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there. shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph; * * *." Revenue Act of 1934, 48 Stats. 680, 686, 687, 26 U.S.C.A. Int.Rev.Acts, page 670.

**23**

express terms to them or the class into which they had been segregated, particularly in view of the peculiar treatment Congress had accorded them in the past.

Petitioner also asserts that the purpose of Section 117(f) is to place the profit accruing to an individual upon the maturity of an obligation on an equal footing with the profit accruing to an individual who actually sold an obligation to a third person before maturity. However this may be, it should be noted that Section 117(f) is not all-inclusive. For example, it is limited to evidences of indebtedness of a *corporation,* and further limited to evidences of indebtedness of a corporation *"with interest coupons or in registered form."* (Emphasis supplied.)

Petitioner further contends that what we are dealing with here is in fact an investment rather than a "true policy of life insurance", and cites cases in support of the investment character of an endowment contract. It is argued that this investment character brings it within Section 117(f). As indicated previously, it is not every investment that is included within the limiting terms of Section 117(f). Moreover, assuming the investment character of an endowment contract, any similarity to bonds which may be drawn from this character is more than outweighed by the previously mentioned dissimilar treatment accorded by Congress to endowment contracts.

In view of this dissimilarity of treatment and as we are dealing with the scope of a legislative reduction of amount to be taken into consideration in computing net income,[5] we hold that in the absence of express statutory mention of life insurance or endowment contracts in Section 117(f) and in the absence of showing of a legislative history indicative of the intent that they come within its scope, Section 117(f) is not applicable here.

The bond interest received was upon street improvement bonds stipulated by the parties to have been *"issued by* various California municipalities under the California Improvement Act of 1911, as amended, approved April 7, 1911, California Stats. 1911, page 730, Deering's General Laws of California, Act No. 8199." (Emphasis supplied.) Decision as to whether this interest was exempted by Section 22(b) (4)

of the Revenue Act of 1934,[6] as "Interest upon * * * the obligations of a State, * * * or any political subdivision thereof * * *" is controlled by our decision in Bryant v. Commissioner, 9 Cir., 111 F.2d 9, this day decided, holding interest of the character here involved exempt.

In summary, we agree with the Board as to the profit from the endowment contract and hold that none of it is capital gain; we disagree with the Board as to the bond interest and hold that it is exempt.

It appears that in reaching its decision that there is a deficiency of $1,375.68 the Board treated the bond interest as taxable and that a different decision may result if, in accordance with our holding, the bond interest is treated as exempt.

The decision is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

[5] Cf. White v. United States, 305 U. S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

