## STODDARD v. UNITED STATES.
### No. 1703.

District Court, D. Massachusetts.

March 31, 1943.

Auvergne Williams, of Memphis, Tenn., and Nuel D. Belnap, of Chicago, Ill., for plaintiff.

Harold L. Clark, and Phillips Ketchum, and Herrick, Smith, Donald, Farley & Ketchum, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Clarence E. Dawson, and George J. Laikin, Sp. Assts. to the Atty. Gen., for defendant.

WYZANSKI, District Judge.

The issue in this case is whether a taxpayer incurred in 1934 an ordinary, fully deductible loss or a capital loss deductible only to a limited extent.

The taxpayer in 1933 owned common stock of the insolvent Worcester Bank and Trust Company (hereafter sometimes called Bank 1) on which he had been assessed $120,000.

To satisfy his stockholder's liability the taxpayer was invited to assent to a Plan of Reorganization dated May 8, 1933. That plan provided that the taxpayer should pay

$90,000 as a subscription for shares having a $30,000 par value of the Worcester County National Bank (hereafter sometimes called Bank 2); that he should assign to Worcester Depositors' Corporation his right to receive those shares and should agree to indemnify the Corporation up to a maximum of $30,000 additional; and that he should receive from the Corporation its class C certificates having a face value of $30,000, but having an uncertain actual value.

The taxpayer assented to and became a party to the plan. So did sufficient other stockholders. Appropriate steps were taken by all parties to effectuate the plan. Thereafter, the taxpayer made his payment; the stock in Bank 2 issued directly to the Corporation; and the taxpayer received Class C certificates.

Those Class C certificates, issued by the Corporation in the name of the taxpayer, were transferrable in the same manner as certificates of stock. They provided that, after all debts of the Corporation were paid and after certificates of prior series had been paid, the Corporation would distribute pro rata to holders of Class C certificates such stock of Worcester County National Bank (Bank 2) and such other assets as the Corporation then had. The certificates further provided that upon such distribution the certificates should be surrendered.

On November 13, 1934, pursuant to a second or revised plan of reorganization, the taxpayer surrendered his Class C certificates to the Corporation and received from it stock of Worcester County Trust Company worth $5,480 (hereafter for convenience sometimes called Bank 3 although strictly speaking, Bank 3 is a recapitalized and reorganized form of Bank 1 and not a new bank).

On certain aspects of this case the taxpayer and the government are in accord. They agree that in 1933 the taxpayer had not experienced a closed transaction evidencing a tax loss. Compare United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 403, 47 S.Ct. 598, 71 L.Ed. 1120; Selma Wertheimer v. Commissioner, 31 B.T.A. 407, 411; Louisa County National Bank v. Commissioner, 27 B.T.A. 573, 575. At that time there was no way of valuing the certificates. Indeed, it was uncertain whether in the long last the taxpayer would receive anything in distribution or, on the contrary,

would be required to contribute more pursuant to his indemnity agreement.

The parties also agree that the taxpayer finally did sustain a loss on November 13, 1934 when he turned in his certificates and received stock in Bank 3. And they agree that this loss amounts to $84,520, that is, the difference between the $90,000 which the taxpayer paid for stock in Bank 2 in the 1933 reorganization and $5,480, the value of stock in Bank 3 which the taxpayer received in the 1934 reorganization.

The disagreement between the parties is whether the loss was an ordinary loss which under § 23(e) (2) of the Revenue Act of 1934, 48 Stat. 680, 689, 26 U.S.C.A. Int.Rev. Acts, page 672, may be deducted in full from gross income for the purpose of arriving at taxable income, or was a capital loss deductible only to the limited extent provided in § 117(a) and (d), 48 Stat. 680, 714, 715, 26 U.S.C.A. Int.Rev.Acts, pages 707, 708. The taxpayer claimed it was an ordinary loss, and made his returns and payments to the collector accordingly. The collector claimed it was a capital loss, and made an assessment and a collection of a $48,584.14 deficiency accordingly. Thereupon, the original collector having resigned, the taxpayer sued the government for that sum with interest.

On the re-argument of this case the government's main point is that, on a realistic view, the taxpayer engaged in 1933 and 1934 in a series of transactions which taken as a whole was an "exchange" of stock for stock within the meaning of § 117(d) of the Revenue Act of 1934, 48 Stat. 680, 715. The contention is that the taxpayer first acquired stock in Bank 2, then exchanged it for interim receipts called Class C certificates and ultimately exchanged them for stock in Bank 3.

On a careful study of the evidence, and contrary to my initial impression, I am persuaded that that contention is not supported by the facts. I find as a fact that the taxpayer never had even legal title to the stock in Bank 2, since, before the stock was authorized by the Bank or the Comptroller, and before it was issued to anyone, the Bank, the Comptroller, and the Corporation had all agreed that the stock should issue directly to the Corporation. And, apart from questions of legal title, I find as a fact that the plan of reorganization never contemplated, and the effectuation of the plan never permitted, the tax-

payer even for an instant to have beneficial ownership of stock in Bank 2. Never having beneficially owned stock in Bank 2, the taxpayer could not exchange it so as to bring himself within § 117(a). That section cannot be invoked to cover a situation where the taxpayer never had either legal title or beneficial ownership to the stock alleged to have been sold or exchanged.

The government's other contentions (less seriously pressed on the re-argument than on the original argument) are that when the taxpayer in 1934 surrendered to the Corporation its own Class C certificates and received from the Corporation stock in Bank 3, that transaction, looked at in isolation, constituted a capital loss because there was either (1) a retirement of bonds, certificates of indebtedness or the like under § 117(f) of the Revenue Act of 1934, 48 Stat. 680, 715, 26 U.S.C.A. Int.Rev.Acts, page 708; or (2) a distribution in liquidation to stockholders under § 115(c), 48 Stat. 680, 711, 26 U.S.C.A. Int.Rev.Acts, page 703; or (3) a "sale or exchange" under § 117(a) and (d), 48 Stat. 680, 714, 715, 26 U.S.C.A. Int.Rev.Acts, pages 707, 708.

These contentions are without merit.

A Class C certificate was a promise to pay the holder a proportionate part of a mixed fund of securities and other assets after the satisfaction of specific claims. The holder had a contract right buttressed by what was in the nature of an equitable interest in property. Probably a Class C certificate should be denominated a beneficial interest in a liquidating trust comparable to that considered in White v. Hornblower, 1 Cir., 27 F.2d 777. The fact that the parties did not use the word "trust" as a label for their relationship is, of course, not a bar to that conclusion. Wilkinson v. Stitt, 175 Mass. 581, 583, 56 N.E. 830; Restatement, Trusts, § 4 comment (a); Scott, Trusts, § 23. The exact classification is not so important as the facts that the maker's obligation was to transfer certain assets to the holder under certain circumstances; the circumstances occurred; the maker performed its obligation; and thereupon the holder surrendered the certificates to the maker for cancellation.

A certificate embodying such an obligation was not within § 117(f) of the Revenue Act of 1934 because it was not a promise to pay money, it did not bear interest coupons and it was not in registered form. Gerard v. Helvering, 2 Cir., 120 F.2d 235; Avery v. Commissioner, 9 Cir., 111 F.2d 19, 21, 22; Thomas v. Perkins, 5 Cir., 108 F.2d 87, 89.

Such a certificate was not within § 115(c) of the Revenue Act of 1934, because it did not represent a share of stock either in the Corporation itself (stipulation, § 3), or in any other business association. It was right to participate in a fund administered by the Corporation, and that fund was a liquidating trust rather than an "association" or "corporation" as those terms are used in §§ 115(c) and 801(a) (2) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, pages 703, 790. White v. Hornblower and Thomas v. Perkins, both supra; Commissioner v. Atherton, 9 Cir., 50 F.2d 740.

The surrender of such a certificate by the holder to the maker for extinguishment was not a "sale" or "exchange" within § 117(d) of the Revenue Act of 1934. It is clear from a long line of authorities that if the certificate had represented an obligation (buttressed by a right in rem) to transfer cash, and the holder had surrendered such a certificate to the maker for extinguishment, the transaction would not be a "sale" or "exchange" under the revenue laws in the absence of a special legislative definition to the contrary, such as § 117(f) of the Revenue Act of 1934. This would be so regardless of whether the maker gave the holder cash (Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855; Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819), or a third person's check (Lee v. Commissioner, 7 Cir., 119 F.2d 946), or real property. Bingham v. Commissioner, 2 Cir., 105 F.2d 971. The reason is that the terms "purchase" and "exchange" have as their necessary correlatives the terms "sale" and "exchange"; the maker's acquisition of its own obligation for cancellation is from its viewpoint neither a "purchase" nor an "exchange" but the mere discharge and extinguishment of its obligation; and consequently, the holder's surrender of the obligation is from his viewpoint neither a "sale" nor an "exchange". That reasoning obviously applies to the case at bar even though the certificates here embodied a promise to transfer not cash, but assets. When the Corporation acquired its own certificates for cancellation, there was, from its viewpoint, not a purchase or exchange but a mere discharge and extinguishment of its own obligations; and, therefore, the taxpayer's

surrender of those certificates was, from his view point, not a "sale or exchange" but a transaction resulting in an ordinary and fully deductible loss. And this conclusion is not affected by the fact that the maker gave the holder an asset different from the one specified in the original terms of the obligation. Bingham v. Commissioner, 2 Cir., 105 F.2d 971, 972.

It follows that after appropriate computations have been submitted, there should be entered

Judgment for the plaintiff.