OLLENDORFF WATCH CO., INC., and THE TRAVELERS INDEMNITY COMPANY, Plaintiffs, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Defendant.

Third Department, December 29, 1937.

*Otto A. Samuels* [*P. C. Dugan, Otto A. Samuels* and *William J. Moran* of counsel], for the plaintiff Ollendorff Watch Co., Inc.

*Moran, Galli & McGlinn* [*P. C. Dugan, Otto A. Samuels* and *William J. Moran* of counsel], for the plaintiff Travelers Indemnity Company.

*John J. Bennett, Jr., Attorney-General,* and *Henry Epstein, Solicitor-General* [*Leonard M. Gardner, Special Assistant Attorney-General,* of counsel], for the defendant.

HEFFERNAN, J. The single question presented is whether plaintiff Ollendorff Watch Co., Inc., is transacting insurance business in violation of section 9 of the Insurance Law. That section prohibits the transaction of insurance within the State without a certificate of authority issued by the Superintendent of Insurance.

Plaintiff Ollendorff Watch Co., Inc., is a domestic corporation engaged in manufacturing and selling watches. Since October, 1930, that plaintiff has been delivering a certificate to each purchaser of its watches whereby it contracts with each owner as follows: " To replace such watch with a new Ollendorff watch of like quality and value and selling for the same retail price, provided the first watch aforesaid is lost in the United States of America or the Dominion of Canada through Burglary or Robbery as herein defined, within one year from the date of its purchase. This Agreement, however, shall not apply to the replacing watch."

Since the inception of this plan plaintiff has delivered more than 60,000 of these certificates throughout the United States, including owners in the State of New York. The certificates are forwarded by plaintiff from its New York office directly to the owners. In the stipulation of facts it is agreed that the said plaintiff, Ollendorff Watch Co., Inc., adds no charge to the sales price of its watches for the aforesaid certificates and agreements.

The coplaintiff, the Travelers Indemnity Company, is a Connecticut corporation authorized to transact the business of casualty insurance in the State of New York. That plaintiff has agreed to indemnify the Ollendorff Company for all losses sustained under the certificate.

Defendant contends that these certificates are insurance contracts. Plaintiffs insist that the certificate is more in the nature of a guaranty made in connection with the sale of Ollendorff products. The question submitted to this court is: " Does the delivery of said certificates and agreements by the plaintiff, the Ollendorff Watch Co., Inc., to the owners of its watches violate section 9 of the Insurance Law of the State of New York?"   It is important to note that the undertaking of the Ollendorff Company with a purchaser is not to pay money for the lost watch but merely to replace it with a new one.

Our statute contains no declaration as to what constitutes an insurance contract and hence we must resort to the common-law definition of that term.   Whether a contract is one of insurance is determined from its contents and not merely from its terminology. The principal ingredients of such a contract are the consideration, the risk and the indemnity.   The consideration is the premium for the insurer's undertaking; the risk may be said to be the perils or contingencies against which the assured is protected; and the indemnity is the stipulated desideratum to be paid to the assured in case he has suffered loss or damage through the perils and contingencies specified.   Perhaps the best definition of a policy of insurance is that it is an agreement by which one person for a consideration promises to pay money or its equivalent, or to do some act of value to another, on the destruction or injury of something by specified perils.   (14 R. C. L. 839.)   Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency.   As regards property and liability insurance, it is a contract by which one party promises on a consideration to compensate or reimburse the other if he shall suffer loss from a specified cause, or to guarantee or indemnify or secure him against loss from that cause.   (32 C. J. 975.)   In *First Baptist Church* v. *Brooklyn Fire Ins. Co.* (28 N. Y. 153) Chief Judge DENIO, in the opinion of the court as to what is necessary to constitute an insurance contract, said: " The judge stated to the jury in a general way what was essential to constitute a valid contract of insurance, namely, that the minds of the parties should meet as to the premises insured and the risk; as to the amount insured; as to the time the risk should continue; and as to the premium.   *   *   *   I think the definition given a very accurate one, and that there was no error in laying it down."

In *Tyler* v. *New Amsterdam Fire Insurance Co.* (4 Robt. 151) the court cites and quotes the above definition and adds thereto the

following language: " There are, therefore, at least five ingredients necessary in a contract of insurance, (1) the subject matter, (2) the risks insured against, (3) the amount, (4) duration of the risk, and (5) the premium of insurance; a contract of insurance is incomplete which wants any of these."

In Vance on Insurance (2d ed.), 2, an insurance contract is thus defined:

" The contract of insurance, made between parties called the insured and the insurer, is distinguished by the presence of five elements:

" (a) The insured possesses an interest of some kind susceptible of pecuniary estimation, known as an insurable interest.

" (b) The insured is subject to a risk of loss through the destruction or impairment of that interest by the happening of designated perils.

" (c) The insurer assumes that risk of loss.

" (d) Such assumption is part of a general scheme to distribute actual losses among a large group of persons bearing similar risks.

" (e) As consideration for the insurer's promise, the insured makes a ratable contribution to a general insurance fund, called a premium.

" A contract possessing only the three elements first named is a risk-shifting device, but not a contract of insurance, which is a risk-distributing device; but, if it possesses the other two as well, it is a contract of insurance, whatever be its name or its form."

Courts and textwriters have emphasized the necessity of a premium exaction in order to constitute a contract of insurance. That important feature is absent in the certificates before us, for, concededly, the purchaser parts with no consideration whatsoever for the issuance of that certificate.

The certificate in question is a stranger in the courts of this State. Cases have arisen elsewhere, however, where a similar question was involved.

In *Commonwealth of Pennsylvania ex rel. Hensel* v. *Provident Bicycle Assn.* (178 Penn. St. 636; 36 A. 197) the court held that a mutual protective association chartered for the purpose of an accumulation of a fund derived from the payment of fixed annual dues and certain specified amounts periodically, for the protection of its members by virtue of which payments they became entitled to have their bicycles cleaned, also repaired when damaged by accident, the tires repaired when punctured by accident, and the bicycle replaced when stolen, if not recovered in a certain time, and to provide a bicycle during that time — is not an insurance company and does not fall within a statutory class authorized to make insurance

against loss, damage or liability arising from any unknown or contingent event whatever.

In an Iowa case (*Cole Bros.* v. *Haven*, 7 N. W. 383) it was held that a contract by one who had erected lightning rods, that the rods would protect the building for a certain term of years, which undertook to make good all such intermediate damage as might occur by lightning during that term, not exceeding a certain amount, was a contract of guaranty, and not one of insurance, and that the statutes regulating insurance companies were, therefore, inapplicable. In the opinion in that case the court said: " If one is employed to watch a building, he may agree, in consideration of such employment, that he will pay therefor if it burns down through his negligence. In fact, the agreement to pay might be absolute and unconditional. This would not be a contract of insurance, but a guaranty. So one may sell goods, and agree that the purchaser will receive certain named benefits or advantages. Such a contract would be a guaranty or warranty, and not a contract of insurance. The plaintiff ' guarantied ' the lightning-rods would protect the building from all damage by lightning, and if they failed in so doing the plaintiff would pay a certain specified amount. Such a contract could be lawfully made."

In *Evans & Tate* v. *Premier Refining Co.* (31 Ga. App. 303; 120 S. E. 553) the court held that a refining company which sells lubricants for automobiles to a dealer under a written contract whereby it undertakes to indemnify or insure the dealer against breakage of gears of automobiles of such persons as purchase the lubricant from the dealer, and agrees that, if such breakage occurs, it will replace the gears, through the dealer, without loss to owners of automobiles, does not enter into a contract of insurance, or become an insurance company, within the meaning of a statute requiring insurance companies transacting business in the State to obtain a license. In the opinion in that case the court wrote: " Nor can we agree with the contention of defendants' counsel that the plaintiff could not recover the purchase price of the lubricant sold to the defendants, for the reason that the plaintiff had no license as an insurance company to transact business in this State. We do not think that the contract of indemnity or of insurance entered into in this case is a contract of insurance, or that the plaintiff thereby became an insurance company, within the meaning of the statute."

While those cases are not decisive of the question before us and, of course, not controlling, the elements involved in them are substantially analogous to those in the instant controversy. We are convinced that the certificate issued by the Ollendorff Watch Co., Inc., is not a contract of insurance but simply an agreement on its

part, for which it receives no additional consideration, to replace a purchaser's watch lost through burglary or robbery. Obviously it is a mode of advertising to which the Ollendorff Company resorts for the purpose of increasing its sales and not an attempt on its part to engage in a new business.

The question submitted is answered in the negative and judgment is directed in favor of the plaintiffs, without costs, in accordance with the terms of the stipulation.

RHODES and CRAPSER, JJ., concur; HILL, P. J., and McNAMEE, J., dissent.

The plaintiff Ollendorff Watch Co., Inc., is not engaged in the business of insurance.

Judgment rendered in favor of the plaintiffs, without costs, in accordance with the stipulation.