GREGORIO MANAUTOU, Plaintiff and Appellant, *v.* JOSÉ R. NO-GUERA, SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 391. Decided January 31, 1963.

*R. B. Pérez Mercado* for appellant. *J. B. Fernández Badillo, Solicitor General, Arturo Estrella, Deputy Solicitor General, Rodolfo Cruz Contreras, Acting Solicitor General, Genoveva*

*R. Carrera,* and *Irene Curbelo, Assistant Solicitors General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

There are two main questions involved in this proceeding: is the commuted value of the annuity policy subject to taxation under the provisions of Act No. 303 of April 12, 1946, 13 L.P.R.A. § 881 *et seq.,* known as the Inheritance Tax?   Is the amount of attorney's fees paid by a trustee for the dissolution of a trust constituted by the deceased and whose corpus was distributed among certain persons at the death of said constituent deductible for the purposes of the liquidation of said tax?

I

At the sunset of his life—he was then about 70 years of age—José Manautou Fantauzzi acquired four annuity policies, three of which were issued in favor of the insured himself or purchaser with a substitution clause at his death by virtue of which he designated  his brother Gregorio Manautou, appellant herein, as his beneficiary. The commuted value of the aforesaid three policies was fixed at $32,009.54, which amount the Secretary of the Treasury added to the value of the other property received by the appellant as inheritance from his brother for the purposes of the liquidation of the tax imposed under the provisions of Act No. 303.

For a better understanding of the facts we shall set forth the basic stipulations of the three contracts to which we have referred:

(A) No. 437–429 of Pan American Life Insurance Co., dated June 26, 1947: Upon payment of a single premium of $14,400 the company was bound to pay an annuity of $105.55 monthly, with payments guaranteed for ten whole years ($13,666), to annuitant José Manautou, beginning three

years thereafter; and in case of his death after the retirement date, the payments would be made to the beneficiary Gregorio Manautou, until the end of the aforesaid ten years. The death of the annuitant took place on March 5, 1953; he therefore received thirty-three payments, that is, $3,483.15. The commuted value of this policy was fixed at $8,399.17.

(B) No. 11239 of the Confederación del Canadá, dated August 11, 1947: Upon immediate payment of the sum of $13,563 the company was bound to pay the quarterly sum of $225 during the natural life of the annuitant; but if he should die before receiving rent payments for a sum equal to the "purchase price" the beneficiary Gregorio Manautou would be paid a sum equal to the difference existing between the payments of the rent received and the amount of said purchase price. The annuitant received payments up to his death for the amount of $4,950; the commuted value of the contract was fixed at $8,613.

(C) No. A-34060 of the Sun Life Assurance Company of Canada, dated February 28, 1951: By virtue of an advanced payment of $20,000, the company agreed to pay bi-annually the sum of $676.90 to the "rentee" José Manautou; but if he should die before having received payments for fifteen whole years, the payments would continue to the beneficiary Gregorio Manautou till the end of said fifteen years. The rentee received rents for $2,707.60; the commuted value of this policy was fixed at $14,997.37.

The fourth annuity policy was acquired by the deceased from the Manufacturer's Life Insurance Co.,[1] María Lavergne being designated as beneficiary and, at her death, the appellant. The commuted value of this contract at the time of the death of José Manautou was fixed at $7,816, which amount was included in the participation of María

---

[1] This contract was not offered in evidence and the information which we offer has been obtained from an examination of the liquidation sheet of the "inheritance left by José Manautou Fantauzzi" prepared by the Inheritance Bureau of the Department of the Treasury.

Lavergne, and on which the corresponding tax was levied and paid. Shortly thereafter, at the death of the aforesaid beneficiary, the Secretary attributed to this contract the commuted value of $7,141 and added it to the other property received by the appellant. In relation to this amount, the appellant raises the question that in case it were decided that the commuted value of these contracts should be included in the property received by him, he is entitled to the five per cent credit established in subd. (b) of § 5 of Act No. 303, 13 L.P.R.A. § 887(b).[2]

The trial court decided that the commuted value of the aforesaid contracts was part of the property subject to tax because (a) an annuity constitutes a gift for the purposes of the law; and, (b) pursuant to § 15 of Act No. 303, 13 L.P.R.A. § 882, the term "property" includes life incomes or *annuities* of any form or kind, pursuant to § 1(a), 13 L.P.R.A. § 881, any property transferred for less than its fair value constitutes a gift.

In *Freeman* v. *Noguera, Sec. of the Treasury*, 82 P.R.R. 298, 301–302 (1961), we made a survey of the legislation on the levy of "inheritance tax" since the change of sovereignty up to the present time.[3] Upon characterizing the present situation, we said: "By virtue of Act No. 303 of April 12, 1946, *supra*, the tax upon property transferred by inheritance is substantially altered and a new system is adopted

---

[2] Said section reads as follows:

"Where part or all of the property comprising the gift is derived, directly or indirectly, from property that has been subjected to inheritance, gift, or succession tax within twenty years prior to the date of the gift, there shall be allowed as a credit an amount equal to five (5) per cent of such previous taxes for each year by which the intervening period is less than twenty years or a credit of five (5) per cent of the tax paid on each previous gift for each year of the age reached by the recipient, when the donor of such previous gift has reached the age of fifty years if alive, or was fifty years old, if dead."

[3] In *Silva* v. *Sec. of the Treasury*, 86 P.R.R. 315 (1962), reference is made to the tax system prevailing as to transfers by inheritance under the Spanish rule.

178

which is essentially a tax on the *transfer* of property. To that effect the scope of the assessment is enlarged and it practically includes every kind of transfer, whether inter vivos or mortis causa. The tax is no longer a tax upon the property or persons, and specifically upon the inheritance estate, but rather one which considers as the incidence of tax the transfer or transmission of property, that is, the tax is laid *upon the power to transfer the property* or upon *the right to inherit.*" The terms of the definition of "gift" are ample, *Veve* v. *Sec. of the Treasury*, 78 P.R.R. 695, 700 (1955), but the scope of such statement does not go any further than what we stated in *Blanco* v. *Registrar*, 70 P.R.R. 16, 18 (1949), to the effect that "any transactions which were never before so classified under the civil law" are defined and included as taxable gifts. It is therefore inferred that in order to levy the tax provided by said Act it is necessary that the transaction or transfer be included or embraced within any of the definitions of § 1, 13 L.P.R.A. § 881.[4] Having laid down this basic premise, we need only examine now whether the annuity contracts involved in this case are included within any of the definitions contained in said section.[5]

▮ First however, let us glance rapidly at the situation prevailing in the federal jurisdiction. Prior to the approval of the Federal Internal Revenue Code of 1954, an annuity contract consisting of annual payments was not included by any specific provision of law imposing inheritance tax; it was included, by interpretation of the courts, under the generic classification of transfers in contemplation of, or taking effect at the death of the predecessor, or on which the latter retained a certain degree of possession or enjoyment until his

---

[4] With respect to the levy of tax on United States bonds by reason of the death of the person or one of the persons in whose favor they are issued, see *Ronda* v. *Torres*, 71 P.R.R. 657, and *Veve* v. *Sec. of the Treasury*, 78 P.R.R. 695 (1955); *cf. Ab Intestato Nakdimen*, 83 P.R.R. 441 (1961).

[5] *Cf.* 2 MERTENS, Law of Federal Gift & Estate Taxation 30 *et seq.*, Ch. 13 (Exclusiveness of Gross Estate Sections) (1959).

death.   Section 811 (c) of the Internal Revenue Law of 1939,
26 U.S.C. (Internal Revenue Code of 1939) § 811(c) ;
*Helvering* v. *La Gierse*, 312 U.S. 531 (1941) ; *Conway* v.
*Glenn*, 193 F.2d 965 (C.A. 6, 1952) ; *Burr* v. *Commissioner
of Internal Revenue*, 156 F.2d 871 (C.A. 2, 1946) ; *United
States* v. *Tonkin*, 150 F.2d 531 (C.C.A. 3, 1945) ; *Mearkle's
Estate* v. *Commissioner of Internal Revenue*, 129 F.2d 386
(C.C.A. 3, 1942) ; *Commissioner of Internal Revenue* v. *Clise*,
122 F.2d 998 (C.C.A. 9, 1941), commented in 40 Mich. L. Rev.
924 (1942) ; *Helvering* v. *Tyler*, 111 F.2d 422 (C.C.A. 8,
1940) ; *cf. Fidelity-Philadelphia Trust Co.* v. *Smith*, 142
F. Supp. 561 (E-D Pa. 1956), commented in 43 Minn. L. Rev.
354 (1958) ; *Ford* v. *Kavanaugh*, 108 F. Supp. 463 (E-D
Mich. 1952) ; Foosaner, Taxation of Life Insurance and An-
nuities 264–267, § 11.01 *et seq.* (1960) ; Lasser, Estate Tax
Handbook 225–226 (1951) ; *Estate Taxation of Survivor
Annuities, Section 811 (c) and the Proposed I.R.C. of 1954*,
6 Stan. L. Rev. 472 (1954) ; Note, 49 Yale L. J. 946 (1940) ;
Note, 32 Ill. L. Rev. 223, 232 (1937).   It was not until the
approval of the 1954 Code that a specific provision was
adopted including the value of the annual payments in the
taxable gross estate.   26 U.S.C. § 2039; 2 Mertens, Law of
Federal Gift & Estate Taxation, Ch. 18 (1959).   Act No.
303 does not contain a similar provision to § 811(c),[6] and,
therefore, even if we accept that appellant received as bene-
ficiary a transfer in contemplation of, or taking effect at the
death of the predecessor, we can not consider it as taxable.
This difficulty stems from the peculiar character of our
statute which specifically enumerates transactions which shall
be considered as "taxable gifts" and that in its more general

---

[6] Section 42 of the new law for the levying of tax on inheritance and
gifts expressly provides that: "the value of the gross estate includes the
amount of any insurance policy, annuity contract and other contracts, pay-
able to beneficiaries (designated or not) on the life of the deceased, in-
dependently of the person who paid the premiums or costs of the contract
and without considering the rights of the deceased on the policy or con-
tract at the time of the death."

definitions it tends to refer to transfers by title of inheritance. It is the inevitable consequence of the hybrid union of provisions on transfer tax—Act No. 303 of 1946—and of inheritance tax—Act No. 99 of 1925.

Let us analyze the question in the light of the local statutory definitions of "taxable gift."

a—We agree with the appellant that the life incomes and annuities mentioned in § 15 of Act No. 303, *supra*, which defines as "property", "both real and personal estate, and any form of interest therein, including life incomes or annuities of any form or kind, as well as usufruct, nude property, or any kind of rights and actions," does not include the annuity contracts. Under the aforesaid Act, these concepts have the same meaning and scope as they have under § 14 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790), from which this provision was literally taken.[7] It seems clear that in this original Act its scope and meaning referred to income and annuity derived from annuity contracts provided by § § 1496 [8] and 1702 [9] of the Civil Code, 1930 ed., 31 L.P.R.A. § § 4171 and 4791. This is so because they are the only ones that may be classified as "interest" in real property, as required by law, and such as are, obviously, the usufruct and the nude property expressly mentioned in the provision under consideration.[10] Furthermore, this definition refers to the object of

[7] The same language was contained in § 380 of the Political Code, approved March 1, 1902. Revised Statutes of 1902, p. 4?1; Revised Statutes of 1911, § 3087.

[8] "An annuity (*censo*) is constituted when any real property is subjected to the payment of a pension or annual income in compensation for a capital which is received in cash, or for the full or partial ownership of the property which is conveyed."

[9] "An aleatory contract of annuity binds the debtor to pay a pension or annual income to one or more specified persons for life, for a principal in personal or real property, the ownership of which is at once transferred to said debtor charged with the income."

[10] This express reference to "usufruct, nude property, or any kind of rights and actions" was added by virtue of Act No. 189 of May 13, 1948 (Sess. Laws, p. 526).

the donation, but not to the transactions which, because they are included within the definitions of gifts contained in § 1 of Act No. 303, *supra*, give rise to the taxation.

b—By virtue of Act No. 103 of April 25, 1950 (Sess. Laws, p. 262), there was added as definition of the term taxable gift "any conveyance of property under the obligation on the part of the recipient to pay the conveyor any life annuity, even though the same be equivalent to the revenue derived from the value of the property." This legislative action was undoubtedly a sequel of the opinion rendered by this Court in *Blanco* v. *Registrar*, 70 P.R.R. 557 (1949), in which we had held that the transfer of a property in exchange of an annuity, if the latter is greater than the lease rental on the property and not lower than the legal interest, does not constitute a taxable gift, since the assignee shall receive the property prima facie for its fair value. See *Blanco* v. *Registrar*, 70 P.R.R. 16 (1949); *cf. Greene* v. *United States*, 237 F.2d 848 (C.A. 7, 1956); *Updike* v. *Commissioner*, 88 F.2d 807 (C.C.A. 8, 1937). A slight examination of this provision will immediately show that the annuity contracts are not included, neither expressly nor impliedly, in the above copied definition. As it may be noted, in the insurance contract the one who receives the capital and pays the rent is the insurance company; the beneficiary does not receive any capital, but only the rent at the death of the annuitant.

c—"When a property is transferred for less than its fair value, either in money or money's worth, or by exchange, the excess of the fair value of said property over the consideration in money or money's worth, or thing for which said property was exchanged, shall be considered a gift." Such is the provision of the second paragraph of § 1(a) of Act No. 303, *supra*. This provision referring to transfers for insufficient consideration has its concomitant in §§ 2043 and 811(c) of the Federal Internal Revenue Codes of 1954 and

1939, 26 U.S.C. § 2043 and 26 U.S.C. (I.R.C. 1939) § 811(c). 1 Mertens, *op. cit.* at pp. 250–260, § 5.03 explains that this section (a) supposes a reduction or depletion in the donor's estate; (b) the consideration received should be money or its money's worth—property, services or any benefit which has a value in money's worth.[11]

The above-mentioned author, points out, on pages 281–282 that "Adequate and full consideration may be found supporting a transfer of property when the transferor is given an annuity whose value, measured at the date of the transfer, is equal to the value of the property interest transferred." See *Olson* v. *Reisimer*, 170 F. Supp. 541 (E-D Wis. 1959); *Nourse* v. *Riddell*, 143 F. Supp. 759 (S-D Cal. 1956); *United States Nat. Bank of Portland (Ore.)* v. *Earle*, 45 AFTR 1317 (D-C Ore. 1953). That is precisely the situation in the present case, for the rent guaranteed in the contracts is substantially the same as the "single premium" paid by the insured.

d—Assuming, arguendo, that for the purposes of the act the annuity contracts be considered as modalities of life insurance,[12] they would still be excluded because the pertinent de-

---

[11] See *Pedraza* v. *Registrar*, 85 P.R.R. 228 (1962), on the waiver of usufruct on the part of a mother in favor of her daughters; *cf. Consolidated Cigar Corporation* v. *Registrar*, 83 P.R.R. 723 (1961).

[12] Section 328 of the Code of Commerce, 26 L.P.R.A. § 1281 as well as § 156 of the Insurance Law, existing at the time of the execution of the contracts and the death of the insured (Act No. 66 of July 16, 1921, 26 L.P.R.A. § 1005), considered as including within life insurance any "combination which can be made, making agreements with regard to the payment of premiums or of capital in exchange for the enjoyment of a life annuity or up to a certain age..." See § 13.130 of the Insurance Code of 1957, 26 L.P.R.A., Vol. 5A, § 1313.

American courts have made sharp differences between life insurance and annuity contracts, particularly from the point of view of the risk involved. The distinction was mainly established for the purpose of determining whether the latter would be entitled to the exceptions granted to the proceeds of a life policy. For an excellent summary on this point, see Comment in 35 Boston U. L. Rev. 317, 320–322 (1955). See, also, *In re Clark's Estate*, 354 P.2d 112 (Utah 1960); *Day* v. *Walsh*, 42 A.2d 366 (Conn. 1945); *Succession of Rabouin*, 9 So.2d 529 (La. 1942); *Daniel* v.

finition refers only to ordinary life or endowment policies. We make clear, however, that the fact that the annuity contracts were not included in this paragraph does not place them ipso jure outside the application of the law, provided they qualify under any other of the legislative definitions of taxable gift.

e—Having discarded the possibilities of taxation under the definitions referring to annuity, transfer for less than its fair value and life insurance, there only remains for our consideration whether the annuity contracts may be considered as transfer made "by inheritance, by will or by intestate." [13] Again a negative solution prevails, for the annual payments or rents to the beneficiary at the death of the insured do not constitute a transfer by will or intestate; the proceeds of the policy are received by virtue of contractual provisions. *Oliver v. Oliver*, 57 P.R.R. 478 (1940) ; *Esposito v. Guzman*, 45 P.R.R. 771 (1933) ; *cf. Wood v. Tax Court; Descartes, Treas., Int.*, 71 P.R.R. 216 (1950) ; *In re Gagan's Estate*, 256 P.2d 836 (Wash. 1953) ; *Rogers v. Oklahoma Tax Commission*, 263 P.2d 409 (Okla. 1952). Annotation, *State succession, transfer, inheritance or estate tax in respect of life insurance and annuities*, 73 A.L.R.2d 157, 171 (1960).

This case vividly illustrates the urgent need for the Legislative Assembly to review the legislation existing on transfers inter vivos and mortis causa. Sixteen years have elapsed since the approval of Act No. 303, which because of its unfortunate language has permitted the circumvention of the social purpose which underlies this class of legislation—the

---

*Life Ins. Co. of Virginia*, 102 S.W.2d 256 (Texas 1937) ; *Hall v. Metropolitan Life Ins. Co.*, 28 P.2d 875 (Ore. 1934) ; *In re Rhodes Estate*, 94 N.Y.S.2d 406 (1949) ; *Federal Taxation of Combined Annuity and Life Insurance Contracts*, 49 Yale L. J. 946 (1940).

[13] The Spanish civilian JUAN VALLET DE GOYTISOLO maintains the interesting theory that life insurance in favor of a third person constitutes a modality of what he designates indirect gifts, that is, "to execute inter vivos indirect gifts of the mortis causa nature." He argues that if by some valid juridical means, but different from the formalities required by

economic value of the property is a social product and the community has been recognized the right to participate in that value—by virtue of a series of transactions which because of their effect clearly constitute transfers in consideration of or having the effect at death. A simple law with clear definitions and of easy administration should be considered as promptly as possible.

## II

By a trust deed executed in the city of New York on January 26, 1953, José Manautou Fantauzzi, as constituent, delivered to the banking institution City Bank Farmers Trust Co., as trustee, securities worth $105,286.25, consisting in 2800 shares of Central Aguirre Sugar Co., 1000 shares of the Royal Bank of Canada, and 735 of the Fajardo Sugar Company. The trustee assumed the obligation to administer the property trusted to it during the lifetime of the constituent, and at his death, of liquidating the trust distributing its amount in the manner provided in the deed, that is, $10,000 to María Lavergne, and the remainder to appellant Gregorio Manautou.

The constituent died on March 5, 1953, and the bank, in compliance with its contractual obligation, proceeded to liquidate and dissolve the trust. To that effect it used the professional services of O. B. Frazer, attorney at law, to whom it paid "the reasonable amount" of $3,000 for attorney's fees. This sum was deducted by the bank from the net value of the trust, and therefore, it was not actually received by appellant in his share. Upon computing the corresponding tax, the Secretary included among the property

the Code, the typical result of the gift is obtained—enrichment of the donee and impoverishment of the donor in conjunction with the animus donandi—this result constitutes an indirect gift. **XXX** *Revista de Derecho Privado* 943–958 (1946), particularly pages 946, 948 and 951–952; *"La Donación Mortis Causa y el Código Civil"*, 25 *Revista Crítica de Derecho Inmobiliario* 321 (1952); *"La Donación Mortis Causa en el Código Civil Español,"* 5 *Anales de la Academia Matritense del Notariado* **625, 798–828** (1950).

subject to tax the total value of the property in trust, but it refused to admit as a deduction the sum of $3,000 paid for the aforesaid purposes.

The trial court upheld the administrative action on the ground that "the tax lien falls on the property object of the transfer from the very moment of the death and any expense *incurred subsequently* may only be deducted by legislative grace," and since this transfer was not included among the "deductions" [14] authorized by § 4 of Act No. 303, its admission was improper. The trial court erred.

In *Silva* v. *Secretary of the Treasury*, 86 P.R.R. 315 (1962), we considered a similar situation. At the death of the predecessor a judicial administrator was designated for the conservation and defense of the property left by the deceased, so that once the nonexistence of the legitimate heirs was established, the property be delivered to the state. Two actions of filiation were filed and the court instructed the judicial administrator to oppose them, wherefore the latter, in his capacity as attorney, rendered the necessary professional services until the termination of the suits. The sum of $14,785 was fixed as compensation for the services rendered and the prevailing heirs in the filiation actions were ordered to pay, as they actually did. Said heirs filed an amended tax return and included as a deduction from the estate the sum of $14,785 paid for attorney's fees. After an exposition on the nature of the tax—not the tax on "the right to transfer the totality of the hereditary estate, but to tax the right or privilege of each heir, legatee or beneficiary of the inheritance to receive his liquid or individual share"— and of the operations necessary to liquidate the hereditary estate, we rejected the view sustained by the Secretary and

---

[14] The aforesaid § 4, 13 L.P.R.A. § 886, does not deal directly with deductions, but with the *exceptions* which are granted by reason of the existence of certain relationship of kin, disability of the donee, or when the donee is a charitable association or a public institution, generally for nonpecuniary purposes.

186

adopted by the respondent court to the effect that said sum was not deductible because the debt arose after the death of the predecessor, and we held that it was improper at law to include said amount as part of the estate "received by the heirs," since "the computation of the tax is made on *the numerical amount of the 'gift' received by the recipient.*" To that effect we considered that (a) it was a case of services rendered to the estate; (b) its amount was paid with money from the inheritance, and (c) the payment was made involuntarily because it was the result of a judicial mandate. See, also, *Boerman* v. *Heirs of Boerman*, 52 P.R.R. 593, 601 (1938); *Franceschi* v. *District Court*, 45 P.R.R. 646, 651 (1933).

In the present case there is no doubt that the steps taken for the dissolution and liquidation of the trust were necessary for the distribution of the net amount of the securities in trust as provided by the constituent. The services were paid with money belonging to the deceased himself. And it may be affirmed that the payment was involuntary because it was ordered in the deed by the constituent himself. In this respect it is well to point out that the authenticity or reasonability of the payment made to Frazer [15] was not challenged. In the petition filed by the appellant the fact of the payment was expressly alleged, and even more, it alleged that it was "a reasonable amount." These facts were expressly admitted in the answer. The deduction of said amount is proper.[16]

By virtue of the foregoing the judgment rendered by the Superior Court, San Juan Part, on August 19, 1960, will be

---

[15] Among the deductions that were admitted by the Secretary of the Treasury, the following are obviously related to the liquidation of the trust: To Mr. Bernardini Palés, attorney at law, for sending documents to Mr. Frazer to New York, $100; for miscelaneous expenses, Mr. Frazer in relation to the ancillary administration in New York, $175; to City Bank Farmers Trust Co., for commissions due on the capital of the trust, $1,540.72.

[16] In general terms, the same conclusion is reached with respect to the assessment of federal tax. 4 MERTENS, *op. cit.* at p. 136, § 26.37.

reversed and another rendered instead granting the complaint filed with all proper pronouncements.

